The Alexandria, Arcadia & Fort Smith Railroad Company v. G. H. T. Johnson *et al.*

No. 9499.

Ultra Vires — *cannot, after performance by the other party, be pleaded by guarantor of corporation's contract.* Persons who guarantee to a railroad company the repayment of money to be expended by it for another railroad company under a contract between such companies, cannot, after such money has been expended, defend a suit upon their guaranty by alleging and showing a lack of power in such first-mentioned company to enter into the contract with its obligee.

Error from Atchison District Court. Hon. W. D. Webb, Judge. Opinion filed May 8, 1897. *Reversed.*

*B. F. Hudson*, for plaintiff in error.

*H. M. Jackson*, for defendants in error.

DOSTER, C. J. On October 7, 1889, the plaintiff in error, the Alexandria, Arcadia & Fort Smith Railroad Company, and the Kansas City, Louisiana & Gulf Railroad Company, entered into the following agreement:

" This contract made and entered into this seventh day of October, 1889, between the Alexandria, Arcadia & Fort Smith Railroad Company, of the first part, and the Kansas City, Louisiana & Gulf Railroad Company, of the second part, both corporations organized under the laws of the State of Louisiana,

" WITNESSETH: That for a valuable consideration hereinafter stated the corporation of the first part hereby sells and obligates itself to convey and transfer as hereinafter provided, to the corporation of the second part, all of its rights, privileges, franchises, and subsidies acquired by and now belonging to it; and the said corporation of the first part further agrees and sells to the party of the second part all the real estate and town lots in the town of Arcadia, the legal title to which is now vested in F. P. Stubb, of Monroe, La., trustee, who holds the same for the benefit of the party of the first part, said real estate consisting of one undivided one-third interest in all of the unsold lots in that addition to the town of Arcadia, La., known as the Young Brothers' Addition, being in all one hundred and nine lots; also, an undivided interest in all the unsold lots in that addition to the said town of Arcadia known as the Butler Addition, consisting of thirty-four lots; also, an undivided one-fourth interest in the unsold lots in that part of the said town of Arcadia known as the V. S. & P. Railroad Addition, consisting of three hundred and three lots: all of which is more fully described by Schedule 'A' hereto attached which also appears by reference to the map of the lots and blocks of the said town of Arcadia recorded in the clerk's office of the parish of Bienville, State of Louisiana, at Sparta.

"The said corporation of the first part further agrees that it will procure depot grounds in the town of Arcadia for the railroad of the corporation of the second part, not less than two thousand feet long and two hundred feet wide; but it is agreed between the parties hereto that in case the said depot grounds should be located on any of the lots hereby sold to the corporation of the second part, that, in that event, the corporation of the second part shall contribute its interest in such lots as may be necessary for said purpose free of cost to the said corporation of the first part.

"It is further agreed by the parties hereto that the party of the first part will procure, and cause to be conveyed to the party of the second part, the right of way for a railroad through the Parish of Bienville, from the town of Arcadia to the south line of said parish, 150 feet wide through the timber lands and one hundred feet wide through cleared lands, and as much wider as can be obtained without additional cost.

"In consideration of all of which the corporation of the second part agrees and obligates itself and its successors that it will complete a standard-gauge railroad from the said town of Arcadia to the Red River in the State of Louisiana, to a point crossing said Red River within twenty-five miles of Alexandria in said state.

"And the corporation of the second part further agrees to commence work on the actual construction of the said road at Arcadia within ninety days from this date, and to complete the same to Red River to said point of crossing within one year thereafter.

"The said corporation of the second part further agrees and binds itself and successors to build and maintain its depot in the town of Arcadia, at such point as shall be agreed upon by the parties hereto.

"The party of the first part further agrees and covenants, that on the completion, by the corporation of the second part or its successors, of said railroad from the town of Arcadia to the Red River, and to the point of crossing the same, it will convey by proper deeds of conveyance all of the real estate hereinbefore described and then unsold to the corporation of the sec-

ond part, or to such person or persons as it may designate, and account to said corporation of the second part for such lots as may be sold between this date and the completion of the construction of said road; but it is agreed between the parties hereto that the corporation of the second part shall have the privilege of making any actual sale of not more than ten lots between the date hereof and the date of the beginning of the actual construction of said road; and in case said number of lots shall be sold within said time, the corporation of the first part shall not be required to account to the corporation of the second part for the lots so sold.

"The corporation of the first part further agrees that, when the corporation of the second part shall put their engineers to work on the actual location of said road, it will turn over to the corporation of the second part all of its engineers' outfit, and pay from time to time as may be necessary the actual cost of an actual survey from the town of Arcadia to such point on the Red River as the corporation of the second part designate as the crossing point of said river, and on the completion of said road to the crossing point on said river, the corporation of the first part will pay to the corporation of the second part the sum of $2,655.75 less the expense of said actual survey, and transfer to the party of the second part the subsidy voted to the corporation of the first part by the town of Arcadia, being a five-mill tax on said town for a term of ten years; but it is agreed that before the corporation of the first part shall advance any part of the price of said actual survey, the individual members of the corporation of second part living in the State of Kansas shall execute and deliver to the corporation of the first part their obligation to the effect that they will reimburse said corporation of the first part for all moneys it shall expend in case said corporation of the second part fails to construct said road as hereinbefore provided:"

In pursuance to the last clause of the above agreement, the Kansas City, Louisiana & Gulf Railroad Company procured certain of its members to execute,

on November 9, 1889, the promised contract of indemnity, which is as follows :

"This agreement, made this ninth day of November, A. D. 1889, between the undersigned members of the Kansas City, Louisiana & Gulf Railroad Company, of the first part, and the Alexandria, Arcadia & Fort Smith Railroad Company, of the second part, witnessseth :

"That whereas the said party of the second part, in pursuance of its contract with the first-named company, dated the seventh day of October, 1889, is furnishing the means to make an actual and permanent survey of the proposed line of railroad of the first-named company, from the town of Arcadia, in Bienville Parish, Louisiana, to the Red River in said State, and to the point of bridging said river :

"Now, therefore, we agree that, in case said company of the second part shall so furnish said money to make said survey, and the company first named herein shall fail to build said railroad as per said contract of the seventh day of October, 1889, then we, said undersigned members, are to refund to said Alexandria, Arcadia & Fort Smith Railroad Company the money so advanced by it in making said survey. Otherwise this contract shall be void."

For shortness of designation the two railroad companies will be hereafter termed the "Arcadia Company," and the "Kansas City Company." The Arcadia Company brought suit upon the above-quoted contract of indemnity, alleging that it had paid the sum of $2,655, the costs of the survey between the town of Arcadia and Red River, and that the Kansas City Company had not repaid the same. The defendants, the indemnitors, filed an answer alleging that, as an inducement to the making of the contracts both of October 7 and November 9, the Arcadia Company represented that it had an interest in a right of way through the parish of Bienville and the interests in the town lots mentioned in the above agreement, and that such town

lots were of great value ; that it had the five-mill tax subsidy, mentioned in such agreement as voted to it by the town of Arcadia, and that it had the right under its charter to convey such right of way and town lots and to transfer such subsidy, together with its corporate franchise, and that it would do so.    The answer alleged that all of these representations were false ; that the Arcadia Company had no right of way, no interest in town lots, and no tax subsidy, and that it could have no legal right to convey or transfer them even if it possessed them.    It was also alleged that, after the execution of the agreements, the Arcadia Company took right-of-way conveyances through the parish of Bienville to itself instead of the Kansas City Company, and that, pretending to act for and in the name of the Kansas City Company, it conspired with divers persons to commence work, as in the name of such Kansas City Company, and then to cause such Kansas City Company to be sued and its interest in such right of way to be attached and sold.    It is further alleged under oath, in the answer, that the Arcadia Company was not a corporation.    Upon the introduction of all the evidence for both parties, the court directed a verdict in favor of the defendants. This direction to the jury is alleged for error and brought here for review.

We feel justified in criticizing counsel on both sides because of their very indifferent presentation of the case.    We have been unable to understand, either from the oral argument or briefs of counsel, what the meritorious legal questions are, except a claim of *ultra vires*, made on behalf of defendants in error ; and this alone will be specially noticed.    Many rulings of the court admitting or rejecting evidence are assigned as error.    Instances of these are noted in the brief of plaintiff in error as follows : '' The plaintiff asked

several questions of witness O'Keefe on direct examination, which we submit were proper, and should have been answered, but which the court ruled out. Record 27–49." And, " Certain questions were asked witness Jackson on cross-examination which the court overruled, which we submit were competent. Record 151." And, " We submit that incompetent evidence was received from witness H. H. Allen over the objections of plaintiff. Record 127, 132." No explanation to indicate why this evidence was improperly admitted or rejected is given, but the reason therefor was left to the court to learn as could best be done. We have not tried to ascertain. Like obscurities affect the presentation of the case by defendants in error.

In a vague sort of way, a claim by the defendants in error that the agreements to be performed by the Arcadia Company were conditions precedent to liability of the Kansas City Company, and, hence, to that of the indemnitors as its sureties, is shadowed forth as a legal proposition, but is unnoticed by the plaintiff in error. It would seem, as a fact, that the agreements by the Arcadia Company with the Kansas City Company have not been performed ; but whether any legal excuse exists therefor, and whether, if no legal excuse exists, the indemnitors may avail themselves of the default, have not been presented to us as points in the case, with sufficient clearness to enable us to enter upon their consideration.

We do understand, however, that the defendants claim the contract between the two railroad companies to be invalid because of lack of legal power in the Arcadia Company to assign its right of way, town lots and franchises, as it agreed to do, and the agreement to do which constituted the moving consideration upon the part of the Kansas City Company and

the indemnitors. Louisiana statutes were read in evidence and Louisiana decisions cited which it is claimed establish the *ultra vires* character of this agreement as a proposition of *lex loci contractus*, and general authorities are likewise cited to the effect that the franchises of a corporation are inalienable. From these the deduction is made that, notwithstanding the performance by the Arcadia Company of its agreement to pay the costs of the survey of the Kansas City Company, such last-named company and its sureties, the defendants in error, may repudiate their agreement to repay such costs. Such is not the law. It is without doubt true that one may refuse performance of an unexecuted contract *ultra vires* in its nature, because of the legal wrong of its performance; but the law is quite lacking in tenderness for such virtuous scruples as arise only after the receipt of benefits from its performance by the other side. In this case, the costs of the survey have been paid by the Arcadia Company — at least so claimed by it. The law, therefore, will not permit the Kansas City Company to refuse payment upon the ground of the invalidity of other and collateral conditions of the contract; and its sureties stand upon no better footing. A case directly in point, both upon principle and similarity of fact, is *Fourth National Bank v. Olney* (63 Mich. 58). In that case it appeared that the bond had been given as security for the payment of money borrowed by a company of which the guarantors were all members; and they were held estopped from denying the authority of the corporation to do what it did. In Angell and Ames on Corporations (9th ed.) 240, it is said:

"The courts of New York have gone very far in enforcing contracts made by corporations, although they are not justified by their charters; and the law of that state now appears to be that such a contract, which is purely executory on both sides, and where no

wrong will be done if the parties are left in their previous situations, should not be enforced, but that the executed dealings of corporations must be allowed to stand for and against both parties, when the plainest rules of good faith so require." *Parish v. Wheeler*, 22 N. Y. 494; *Bissell v. The Mich. S. and N. Ind. Rld. Companies*, 22 id. 258; *DeGroff v. Am. Linen Thread Co.*, 21 id. 124.

In *Bradley v. Ballard* (55 Ill. 413), it was held:

" While a contract remains executory, not only is it true the powers of the corporation cannot be extended beyond its proper limits for the purpose of enforcing the contract, but on the application of a stockholder or of any other person authorized to make the application, a court of chancery would interefere and forbid the execution of a contract *ultra vires*. So, too, if a contract *ultra vires* is made between the corporation and another person, and while it is wholly unexecuted the corporation recedes, the other contracting party. would, probably, have no claim for damages. But if such other party proceeds in the performance of the contract, expending his money and his labor in the production of values which the corporation appropriates, the corporation can never be excused from payment on the plea that the contract was beyond its power."

The previous decisions of this court are all to the same effect. *Pape v. Capitol Bank*, 20 Kan. 440; *Durham v. Carbon C. & M. Co.*, 22 id. 232; *Massey v. Building Association*, 22 id. 624; *Town Company v. Morris*, 43 id. 282. In the last case it was said:

" While an executory contract made by a corporation without authority cannot be enforced, yet where the contract has been executed and the corporation has received the benefit of it, the law interposes an estoppel, and will not permit the validity of the contract to be questioned."

If the corporation itself, the Arcadia Company, could not plead the assumption by it of an excess of power

in the making of its contract, when sued by the indemnitors because of benefits conferred upon it under such contract, no more can they defend because of its lack of legal power, when sued upon the score of benefits received under such contract.

If the direction of the court below to find in favor of the defendants was based upon the theory of the *ultra vires* character of the contract sued upon, such direction was wrong. The character of the contract in such respect is involved in the case as presented to us; and, assuming that it furnished the motive for the action of the court in question, the judgment should be reversed. If, however, the direction to find in favor of the defendants was upon the assumption that the plaintiff had failed to furnish evidence in support of its petition, the court was likewise in error.

A new trial is ordered.