BOWMAN et al. v. FOSTER & LOGAN HARDWARE CO. et al.

(Circuit Court, W. D. Arkansas, Texarkana Division. May 8, 1899.)

1. CORPORATIONS—CONTRACTS ULTRA VIRES—ESTOPPEL.
    A private corporation, which becomes a stockholder in and a borrower from a building and loan association, although its act in becoming a stockholder was ultra vires, is estopped by receiving and retaining the proceeds of the loan from pleading its want of power as a defense to a suit to enforce the security given.

2. ESTOPPEL—ASSUMPTION OF DEBT BY GRANTEE—MORTGAGES.
    A grantee of the property of a corporation, who, by the terms of the deed, assumed and agreed to pay the debts of the corporation, is estopped by his contract to set up as a defense to a suit to foreclose a mortgage given to secure such a debt that the act of the corporation by which the debt was created was ultra vires, and creditors of such grantee stand in no better position.

3. BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY—ADJUSTMENT OF ACCOUNTS WITH BORROWING STOCKHOLDERS.
    The plan of business of a building and loan association required a borrowing stockholder to carry and pay dues upon stock to twice the amount of his loan, the excess being in fact a premium for the loan. Held that, on the insolvency of the association, in adjusting the accounts of a borrowing stockholder, who had kept up his payments until the failure, the dues and fines paid on account of such premium stock would be credited as payments on his loan, and the stock canceled, while the aggregate dues paid on the remainder or loan stock would constitute the amount of paid-up stock on which he would be entitled to dividends at the same rate paid on other paid-up stock; that he would be charged with the amount of the loan actually received, with interest at the contract rate, and credited with interest paid.

This was a suit by the receiver of an insolvent building and loan association to foreclose a mortgage executed by one of its stockholders, in which the receivers of a corporation which had become the owner of the mortgaged property, and was also insolvent, and certain subsequent lienholders and grantees, were made parties or intervened.

The Southern Building & Loan Association, of Knoxville, Tenn., is a corporation chartered under the laws of that state, and is what is known as a building and loan association. J. A. Bowman is an ancillary receiver, appointed by this court; the corporation being in the hands of a receiver in the state of Tennessee. The Foster & Logan Hardware Company and the Logan Hardware Company are corporations chartered under the laws of the state of Arkansas. The charter of the Foster & Logan Hardware Company recites: "The purposes for which said corporation is organized are to establish, own, and carry on and do a general hardware business; to purchase and sell as its own, and to sell on commissions for others, all kinds of merchandise, goods, machinery, iron, cutlery, stoves, tinware, tools, wagon and carriage material, wagons, buggies, plows, and farming implements, and all other merchandise, goods, and articles usually kept for sale at hardware stores and agencies for machinery; to

purchase and sell for others and as its own lime. cement, plaster, lumber, lath, shingles, doors, sash, glass, and blinds: to establish, own, and manage and control a general agency for the sale of all kinds of machinery, farming implements, and other articles;" and designates its place of business at Prescott, Nevada county, Ark. This corporation was organized, and its articles of incorporation filed, on the 23d of April, 1883. The charter of the Logan Hardware Company recites that its place of business is at Prescott, Nevada county, Ark., and that "the general nature of the business proposed to be transacted by this corporation is to manufacture, deal in, buy, and sell, at wholesale and retail, hardware, furniture, agricultural implements, wagons, buggies, and tinware, and to do and perform all things necessary for carrying on a wholesale and retail hardware and furniture business." Its articles were filed January 1, 1891. On December 12, 1889, the Foster & Logan Hardware Company, being the holder of 40 shares of stock in the plaintiff association, borrowed of said association the sum of $2,000, and agreed to pay therefor 6 per cent. interest, and, in addition thereto, to mature the said 40 shares of stock, and out of the proceeds thereof to repay said loan; the said 40 shares of stock being for $100 each, and the same being payable in monthly calls or assessments of 60 cents per share; and to secure the payment of said calls and the payment of said interest the said Foster & Logan Hardware Company executed and delivered to the said building and loan association an obligation in writing, and also a mortgage, which was duly recorded in Nevada county, Ark., on the following described real estate: "That certain lot or parcel of land situate in the county of Nevada, in the state of Arkansas, and thus described: Part of lot four in block twenty in the Railway survey of Prescott, Arkansas, described as follows: Beginning at the western corner of said lot, and running northwardly parallel with West Second street one hundred and forty-two feet; thence in a southeast direction, at right angles with said Second street, forty-six feet; thence in a southwest direction, parallel with said Second street, forty-two feet; thence in a northwest direction, at right angles with said street, twenty-one feet; thence in a southwest direction, parallel with said street, to Main street; thence with Main street to place of beginning." The mortgage recites that this conveyance is in trust, and for the following uses and purposes: that is to say: "That the Foster & Logan Hardware Company, of the first part, is a member of the said Southern Building & Loan Association, and owns forty shares of the seventh series of stock therein, and has obtained a loan of four thousand dollars thereon, for which it has executed its note or obligation of even date herewith, payable to said association at its home office on or before nine years from date. with interest at the rate of six per cent. on the sum of two thousand dollars, payable monthly. and in which note are the following stipulations and conditions: 'Now, if we pay promptly the monthly interest on the said sum of two thousand dollars, and the monthly payments on said shares of stock, and any fines assessed under the rules of said association, and the taxes accruing on the lot of land described in the mortgage securing this obligation, and the premiums necessary to keep the house on said lot insured in such sum as such association may require (not exceeding two thousand dollars), until the said stock becomes fully paid in. and of the value of one hundred dollars per share, then it is understood that upon the surrender of said stock to said association this note shall be deemed fully paid and canceled; but, if we fail to pay promptly, when due and payable. the said taxes and insurance premiums, or default in the payment of said monthly interest, fines, and monthly payments on said stock for a period of six months after the same are, or any installment thereof is, due, then, at the option of said association, the whole indebtedness evidenced by this obligation (including any taxes or insurance premiums due or paid by said association) shall at once become and be due and collectible, and a foreclosure of said mortgage in the manner therein provided may be made. Now, if the said Foster & Logan Hardware Company shall comply with its undertakings in said obligation until the same be paid or canceled, as therein provided, then this conveyance shall become and be void; but, if default be made in all or in one of the particulars mentioned in said note, which shall make the same due, then foreclosure thereof may be had upon the following terms.'" Afterwards, on the 30th day of December, 1891, the Foster & Logan Hardware Company, by deed, which is made an exhibit to the bill, conveyed "all of its goods, chattels,

moneys, credits, and effects, also the real estate and property of every kind, real, personal, and mixed," including the real estate above described, to the Logan Hardware Company, which deed was, on the 11th day of January, 1892, duly filed for record and recorded in the proper office in Nevada county, Ark., and the Foster & Logan Hardware Company thereby became, to all intents and purposes, extinct. By the terms of said deed it is recited, among other things: "Whereas, the Logan Hardware Company has, on the 30th day of December, 1891, become incorporated, and all stockholders in the Foster & Logan Hardware Company have taken stock in the same to the same amount that they held stock for in the original corporation; and whereas, the Logan Hardware Company has assumed, and does hereby assume, all the debts and liabilities of the Foster & Logan Hardware Company; and whereas, at a meeting of all of the stockholders of the Foster & Logan Hardware Company, held on the 30th day of December, 1891, it was unanimously agreed to merge the Foster & Logan Hardware Company into the Logan Hardware Company, and all the stockholders in both companies assented thereto." Then follows a granting clause in the deed, after which follows this recital: "To have and to hold the same unto the said Logan Hardware Company, its successors and assigns, forever; and that the Logan Hardware Company hereby assumes and agrees to pay all the debts and liabilities of the Foster & Logan Hardware Company in full." On April 9, 1895, the Logan Hardware Company conveyed by deed to defendants Samuel W. White and Watson W. White the following portion of said land heretofore described, and the buildings thereon, to wit: "An undivided half interest in the southeastern wall of the Logan Hardware Company Building on the west half of said lot, and also a parcel of land bounded by a line beginning twenty-five feet southeast from the northwest corner of said lot No. 4, on the alley, and running thence in a southeasterly direction parallel with Second street forty-two feet; thence easterly, at right angles, 21 feet; thence northerly, at right angles, 42 feet, to the alley; thence along the alley 21 feet, to the point of beginning." On August 8, 1896, the Logan Hardware Company conveyed the land heretofore described to M. W. Greeson, in trust to secure the payment of a debt to the Nevada County Bank. The land is described in the deed as follows: "Part of lot four, block twenty-one, of the Railroad survey to Prescott, Arkansas, it being that half of said lot lying along West Second street, facing twenty-five feet on West Main street, and sixty-five feet off the southeast ends of lots seven and eight, block thirteen, of the Railroad survey to Prescott, Arkansas, facing sixty-five feet on West Main street and one hundred feet on West Second street; and the said Logan Hardware Company, party of the first part, do hereby covenant and agree with the said M. W. Greeson, of the second part, that the said property, both real and personal, is wholly and entirely its own, and free from all incumbrances except a mortgage to a B. & L. association, and not subject to any previous liens whatever." On the 1st day of October, 1896, the Logan Hardware Company became insolvent, and in a suit brought in the chancery court of Nevada county, Ark., by C. D. McSwain against said hardware company, to wind up the affairs thereof, the defendant O. R. McDaniel was appointed receiver, and as such was put in possession of all of its assets. Afterwards, on intervention filed by said bank in said suit of C. D. McSwain against the Logan Hardware Company, a decree of foreclosure was rendered foreclosing said mortgage to Greeson in trust for said Nevada County Bank. One half—that is to say, 20 shares—of the said building and loan association stock was intended and agreed to be a premium for said loan of $2,000. Monthly payments were made on said stock for 82 months, commencing at the date of said mortgage, to the said building and loan association, and interest at the rate of $10 per month on said sum of $2,000 was paid monthly for 77 months. No other payments have been made on said loan or said stock. The Foster & Logan Hardware Company were owners of five additional shares of stock in said building and loan association, on which said five shares monthly payments of 60 cents per share for a period of 82 months, ending on the 30th day of May, 1896, were made, and said building and loan association, by agreement, has a lien on all of said stock for the payment of said loan of $2,000. That about the 1st of February, 1897, the building and loan association became insolvent, and upon a suit brought in the United States circuit court for the Eastern district of Arkansas, at Little Rock, of Lida Johnson, plaintiff, against said building

and loan association, the said J. A. Bowman was appointed receiver of said building and loan association by said court, and was shortly afterwards appointed ancillary receiver by this court, and as such receiver has in his hands and custody for collection, among other assets of said building and loan association, the note and mortgage executed by the said Foster & Logan Hardware Company. Special leave was obtained from the Nevada chancery court to join the receiver of the Logan Hardware Company as a defendant in this suit. The $2,000 borrowed by the Foster & Logan Hardware Company was used in constructing a building on the property hereinbefore described, in which it subsequently carried on its business. The Nevada County Bank, in its answer, admits the facts above stated, but insists that the monthly payments of interest according to the contract have been more than paid by the 82 payments of 62 cents each on the 45 shares of stock. It also urges that the Foster & Logan Hardware Company acted without legal authority in subscribing for the said 45 shares of building and loan stock of the said building and loan association, and that its attempt to make the Foster & Logan Hardware Company a member of said building and loan association was ultra vires and void, and that the only legal relation created by the issue of said stock and the execution of said mortgage between the said Southern Building & Loan Association and the Foster & Logan Hardware Company, or its successors; the Logan Hardware Company, was that of debtor and creditor; and insists that the Southern Building & Loan Association, at the time of the appointment of the receiver, was justly indebted to the Logan Hardware Company in the sum of $214,—that being the excess of the amount paid by the Logan Hardware Company over the amount borrowed from said building and loan association, exclusive of interest. It insists, further, that the Nevada County Bank is now the owner of the property described in the plaintiff's complaint, having become the purchaser under foreclosure of said deed of trust to the Nevada County Bank, and exhibits as evidence its deed, which is made a part of its answer. It insists that the mortgage is a cloud upon its title, and should be satisfied and canceled. The said O. R. McDaniel, as receiver of the Logan Hardware Company, files a separate answer, substantially the same as that of the Nevada County Bank. Samuel T. White and Watson W. White, a firm known as White Bros., also file a joint answer, in which they say that by deed dated the 9th of April, 1895, the Logan Hardware Company conveyed to them, by warranty deed, with special covenants to warrant and defend the title in said lands against all claims whatever. The land is described in that deed as follows: "Beginning twenty-five feet southeast from the northwest corner of lot four, block twenty, of the Railroad survey to Prescott, Arkansas, on the alley, and running thence in a southerly direction, parallel with West Second street, forty-two feet; thence at right angles, in an easterly direction, twenty-one feet; thence in a northerly direction forty-two feet, to the alley; thence along the alley, in a westerly direction, twenty-one feet, to the beginning,—being that part of the southeast half of said lot four now owned by said Logan Hardware Company; and also an undivided half interest in the southeastern wall of the Logan Hardware Company's building on said lot." It further appears that after the White Brothers had purchased the interest in the eastern wall on that part of the said eastern half of said lot that was owned by the said hardware company, they also procured title to the remainder of the eastern half of said lot 4 in block 20, and erected an adjoining one-story brick building, using the said brick wall as one of the side walls for their building, which they now occupy as a storehouse. It is alleged in their answer that the value of the west half of said lot and the building thereon is greatly in excess of the sum due the plaintiff, and that to secure payment of the amount due on the mortgage it is not necessary to sell the part of the said lot sold to them, and that their rights and interest in the wall should be protected by proper order. They insist that, if any judgment of foreclosure is rendered, or order of sale made herein, the court direct in its decree that the western half of said lot 4, block 20, and the two-story brick building thereon, and the association stock held by plaintiff, be first sold, and the proceeds arising from the same applied to whatever balance may be ascertained and found to be due plaintiff; and that, if it is sufficient to pay the same, that the part of the eastern half of said lot, being 21 by 42 feet, now owned by them, be not sold, but, if it becomes necessary to sell it, that it be sold separately. This case was

submitted on the pleadings, exhibits, and the statement of facts as herein set forth, including the commissioner's deed to the Nevada County Bank for the lands sold under the decree of foreclosure of the Nevada chancery court, which deed is filed and made a part of the record.

Cockrill & Cockrill and McCain & Son, for receiver.
Thomas C. McRae, for defendants.

ROGERS, District Judge. It is contended that, in subscribing for stock in the plaintiff building and loan association the Foster & Logan Hardware Company exceeded its charter powers, and the act was therefore ultra vires and void. Cases are found to that effect. Franklin Co. v. Lewiston Inst. for Savings, 28 Am. Rep. 9, and cases cited in note on page 15; End. Bldg. Ass'ns, § 323. Whether it be true that an ordinary corporation, authorized by its charter to do a general merchandise business, can become a shareholder in a building and loan association, in order to borrow money to carry on its business, in the opinion of the court is not decisive of this case; indeed, the question is not necessary to its decision. If it be admitted that it cannot, still, underlying this question, is another, about which there cannot be much doubt in the light and trend of modern decisions. The Foster & Logan Hardware Company complied with the rules and regulations required by the plaintiff building and loan association in order to become a borrower, and executed the note and mortgage sued on, and accepted the stock. It used the money so borrowed in constructing its business house. So far as the plaintiff building and loan association was concerned, the contract was an executed contract. All the plaintiff building and loan association could do was done. Can the Foster & Logan Hardware Company, after having received and used the plaintiff's money under this executed contract, be heard to say that it had no power to become a member of the association, and that its act was therefore ultra vires? I think not. This subject is fully discussed in 5 Thomp. Corp. §§ 6015–6042, inclusive. The author says (section 6016):

"The great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it."

See note 3, where a great number of cases are cited supporting the text. See, also, Railroad Co. v. Johnson (Kan. Sup.) 48 Pac. 847. In that case the court say:

"While an executory contract made by a corporation without authority cannot be enforced, yet where the contract has been executed, and the corporation has received the benefit of it, the law interposes an estoppel, and will not permit the validity of the contract to be questioned."

Blue Rapids Opera-House Co. v. Mercantile Building & Loan Ass'n (Kan. Sup.) 53 Pac. 761, is a case precisely in point. In that case the opera-house company had taken stock in the building and loan association, and made a loan to finish the construction of the opera house. It got the money, and gave its bond and mortgage. When sued on the bond and mortgage, the opera-house company set up want of power to become a shareholder and to make the loan. The court say:

"Whatever may have been the powers of the officers of the opera-house company in this respect, the defense of ultra vires is not available to the company. The contract has been, in good faith, fully performed by the other party, the money has been paid, and the opera-house company has had the full benefit of the payment and the performance of the contract. The law now interposes an estoppel, and will not permit the validity of the loan contract to be questioned."

See, also, Illinois Trust & Savings Bank v. Pacific Ry. Co. (Cal.) 49 Pac. 197. Franklin Co. v. Lewiston Inst. for Savings, supra, cited by defendants' counsel, is not in conflict with the cases cited. In that case the contract sued on was executory, and that fact is distinctly recognized by the court in the last paragraph of the opinion. Mechanics' & Working Men's Mut. Sav. Bank & Bldg. Ass'n of New Haven v. Meriden Agency Co. (decided in 1855) 24 Conn. 159, seems to support defendants' construction, and there are doubtless other cases to the same effect; but they must yield to the weight of modern judicial authority. I am aware that quasi public corporations—as, for instance, railroad corporations—which owe important duties to the public are governed by a different rule. They will not be allowed to do any ultra vires act which, in effect, disqualifies them from discharging their duties to the public; and, if they do, they are not estopped to invoke the doctrine of ultra vires. Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 11 Sup. Ct. 478; Id., 171 U. S. 150, 18 Sup. Ct. 808. The supreme court do not extend this rule, however, so as to do injustice. Hitchcock v. Galveston, 96 U. S. 341; Railway Co. v. McCarthy, Id. 258; Arms Co. v. Barlow, 63 N. Y. 62; Railway Co. v. Sidell, 35 U. S. App. 160, 14 C. C. A. 477, and 67 Fed. 464. The cases cited, 139 U. S. 24, 11 Sup. Ct. 478, and 171 U. S. 150, 18 Sup. Ct. 808, supra, are distinguishable from cases like that under consideration, and the different United States circuit courts of appeals have recognized that distinction, and, I think, have settled the law in accordance with right and justice and the trend and weight of modern judicial authority. In Gorrell v. Insurance Co., 24 U. S. App. 198, 11 C. C. A. 240, and 63 Fed. 371, the court said: "In New York, however, as elsewhere, the rule is established that the contracts of corporations, made in excess of their rightful powers, but free from any other vice, are not illegal in the sense of the maxim, 'Ex turpi causa,' etc.,"—in support of which is cited a large number of authorities, including several cases by the supreme court of the United States. See, also, Bensiek v. Thomas, 27 U. S. App. 765, 13 C. C. A. 457, and 66 Fed. 104; Coffin v. Kearney Co., 12 U. S. App. 562, 6 C. C. A. 288, and 57 Fed. 137; Railway Co. v. Sidell, 35 U. S. App. 152, 14 C. C. A. 477, and 67 Fed. 464. The court is of opinion that the Foster & Logan Hardware Company, if in existence, and a defendant, could not avail itself of the plea of ultra vires, and, if it could not, neither can its vendees, assignees, or mortgagees. They cannot acquire any stronger position than the Foster & Logan Hardware Company, under which they claim, held. But it is not necessary to rest the opinion upon the point decided supra. By the terms of the deed from the Foster & Logan Hardware Company to the Logan Hardware Company, the latter expressly assumed and agreed to pay all the debts and liabilities of the Foster & Logan Hard-

ware Company in full. The mortgage and note sued on was a liability of the Foster & Logan Hardware Company, and the defense of ultra vires now interposed, if available at all, could only be invoked by the Foster & Logan Hardware Company, or by some stockholder or creditor thereof. 27 Am. & Eng. Enc. Law, p. 396 et seq., and notes; Railroad Co. v. Ellerman, 105 U. S. 166. None of the defendants were either creditors or stockholders of the Foster & Logan Hardware Company, and the Foster & Logan Hardware Company itself passed out of existence when it sold its entire assets to the Logan Hardware Company. The Logan Hardware Company could not, therefore, interpose the defense of ultra vires, and, having assumed to pay the debt, is estopped now to deny either its validity or question its liability to pay it. Millington v. Hill, 47 Ark. 311, 1 S. W. 547; Freeman v. Auld, 44 N. Y. 50; Cramer v. Lepper, 26 Ohio St. 59; Hough v. Horsey, 36 Md. 181; Pickett v. Bank, 32 Ark. 346.

The instrument sued on was a very peculiar one. The Foster & Logan Hardware Company only borrowed $2,000 from the plaintiff corporation. To get it, it had to and did become a shareholder of 40 shares of $100 each, amounting, in the aggregate, to $4,000. To secure said loan and the premiums to be paid on the stock, it executed a mortgage, by which it obligated itself to mature the $4,000 in stock by paying the monthly dues thereon. It also obligated itself to pay 6 per cent. interest on the loan of $2,000. Evidently, $2,000 of this stock covered the $2,000 borrowed, and may be, for convenience, called "loan stock." The other $2,000 in stock, for convenience, may be called "premium stock." The full dues required on the $4,000 stock and 6 per cent. interest was paid up to the time the plaintiff building and loan association became insolvent, which was in January, 1897; and on the 1st of February, 1897, the receiver was appointed by this court. It will be seen on the fifth page of the pamphlet which is made an exhibit to the answer of O. R. McDaniel, receiver, that all dues were payable on the last Saturday in each month, so that, at the time the receiver was appointed, the dues and interest for the month of January, 1897, had not been paid. The plaintiff corporation had, by becoming insolvent, become incapable of carrying out its part of the contract, and the settlement of its business remitted to a court of equity.

In view of the facts, by what rule should a court of equity adjust the rights of the parties under this contract? The question has been decided differently by different courts, and it is not certain that exact justice has been reached by any of them. Indeed, I am not sure that any arbitrary rule which can be stated would accomplish that end in every case. After the most careful consideration in a former case, presenting the same question, I concluded to follow the Pennsylvania and Tennessee decisions (Rogers v. Hargo [Tenn. Sup.] 20 S. W. 430, and Strohen v. Association [Pa. Sup.] 8 Atl. 843), and in that case laid down the following rule as the correct rule of settlement in this district: (1) All loans in arrears prior to January 1, 1897, shall be charged with dues to that date on the actual amount received by the borrower from the association. (2) Charge the borrower with the cash loan obtained, and 6 per cent. per annum inter-

est thereon. (3) Credit the loan with all interest paid and one-half of all fines and one-half of the stock dues paid, with interest on the same at 6 per cent. per annum; also credit the borrower with full amount of stock dues paid since January 1, 1897, if such payments have been made, with interest at 6 per cent. per annum. Make all calculations according to the partial payment plan. After deducting the aggregate of credits, supra, the remainder will constitute the sum due on the mortgage. (4) The aggregate of stock dues paid in on the stock, which represents the actual cash loan, will constitute the amount of paid-up stock upon which the borrower will draw dividends from the association, and the balance of the stock will be canceled. (5) In foreclosures, if the borrower and receiver can agree upon the present cash value of such paid-up stock, such value will be allowed as a credit on the mortgage debt, and all the stock of the borrower be canceled. It will be seen by this rule that all dues paid on the premium stock and all interest are treated as credits on the note, and the stock representing the loan is treated as loan stock, and remains as stock paid up, to the aggregate amount of the dues, upon which the holder might draw dividends like any other creditor upon the winding up of the estate of the plaintiff association by the receiver thereof. The five shares of stock, not covered by the mortgage, held by the Foster & Logan Hardware Company, and conveyed by deed with its other assets to the Logan Hardware Company, it is conceded by the pleadings are subject to a lien in favor of the plaintiff corporation for the payment of the loan of $2,000; but it should not be subjected to sale for the payment of said debt until the $2,000 of stock representing the loan has been sold, and, in the event the receiver of the Logan Hardware Company should pay off the debt due the plaintiff corporation, that stock would remain the property of said company in the hands of the receiver as paid-up stock to the aggregate amount of the dues paid thereon, upon which that company would be entitled to draw dividends like other creditors of the plaintiff corporation upon settlement of its affairs by the receivers thereof. In this case, however, the rights of third persons have intervened, and render it necessary, in foreclosing the mortgage or obligation sued on, to have regard for their rights. No portion of the real estate covered by the mortgage should be sold until the stock, including the five shares of premium stock held by the Logan Hardware Company, has been sold, and that portion of the real estate held by White Bros. should not be sold until the property covered by the Nevada County Bank has been sold. The stocks must also be sold at public auction, unless a price therefor should be agreed upon by all the parties to the suit, in which event such price should be credited on the debt before any portion of the real estate is sold. Applying the rule above stated, I find that there is due the plaintiff building and loan association, after allowing all just credits, principal and interest, the sum of $———, and that the same is a first lien on all the real property covered by the mortgage, and upon the $2,000 stock of the Logan Hardware Company representing the loan of $2,000, and also on the five shares still held by it. The Nevada County Bank, under the trust deed and the decree rendered

thereon, under which it purchased, took subject to the plaintiff's mortgage, and therefore acquired no title as against the plaintiff corporation. In the event the debt found due is not paid, and a sale is made, the "loan stock" shall first be sold and appropriated to the payment of the debt, and, if not sufficient to pay the debt, the property not purchased by White Bros. will be sold, and, in the event it is insufficient to pay the debt, then the property purchased by White Bros. shall be sold, and sufficient thereof appropriated to satisfy this decree, and the residue thereof brought into court for further disposition. The decree of the court therefore will be for the foreclosure of the mortgage on all the property, and an order for the sale, the property to be sold in the order stated, and in conformity with this opinion.