UNITED STATES SAVINGS & LOAN CO. v. CONVENT OF ST. ROSE.

(Circuit Court of Appeals, Ninth Circuit. November 7, 1904.)

No. 1,063.

1. BUILDING AND LOAN ASSOCIATIONS—CONTRACT WITH BORROWING STOCK-HOLDERS—APPLICATION OF PAYMENTS.

Where a borrowing stockholder in a building and loan association for eight years made the monthly payments required, and acquiesced in their application, in accordance with the terms of the written contract, with full knowledge of such terms, a court will not make a different rule for their application merely because the borrower may have believed, when the contract was made, that a different application should be made, but the contract, if enforceable at all, will be enforced as the parties made it.

2. SAME—DEFENSE OF ULTRA VIRES—ESTOPPEL.

Where the contract between a building and loan association and a borrowing stockholder which is a private corporation has been fully executed by the association, and the borrower has received and used the money, it cannot defeat the enforcement of the contract against it, in accordance with its terms, on the ground that the contract on its part was ultra vires because of its want of power to become a stockholder in another corporation.

3. SAME.

Where a private corporation organized for benevolent purposes, and having no power under the laws of the state to become a stockholder in another corporation, subscribed for stock of a building and loan association, from which it also borrowed money, and made the payments required by the contract until the amount paid in dues, premiums, and interest exceeded the sum borrowed, with legal interest, such payments must be applied in satisfaction of the loan, which is the only lawful part of the contract, and the corporation is not estopped, under the rule of the Supreme Court of the United States or of the Supreme Court of the state of Washington, to set up its want of power as ground for cancellation of the contract as to any further liability. Per Gilbert, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Western Division of the District of Washington.

Corwin S. Shank and Winfield R. Smith, for appellant.

J. C. Cross and J. B. Bridges, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. Appellee is a religious corporation formed, organized, and existing under the laws of the state of Washington. Appellant is a corporation organized and existing under the laws of the state of Minnesota, and engaged in business as a building and loan association in the sale of stock, and the loaning of moneys received on account of such stock, to its stockholders only, on what is generally known as "the building and loan association plan." In January, 1893, appellee made application in writing to appellant for a loan of $7,000, and (as was required by the rules and regulations of the appellant) subscribed for 70 shares of stock therein, of the par value at maturity of $100 each, and, upon the acceptance of the application by appellant, the mortgage in controversy was duly executed by appellee. Appellee in May, 1901, brought this suit to cancel and set aside the mortgage upon the ground that the mortgage indebtedness has been fully paid and discharged, and upon the further ground that the contract as made was ultra vires, in that appellee was incapable of entering into a valid contract to acquire, own, or pay for stock in another corporation. The pleadings and evidence herein threshes out the "old story," which has been so often discussed in cases of this character, whether the contract is to be construed as a simple loan of money with interest thereon, and whether the amounts paid for premiums on the stock should be credited on the loan. It was stipulated that the answer should be treated as a cross-complaint. The circuit court, upon the proofs in said cause, adjudged and decreed "that the defendant herein surrender for cancellation the bond, stock certificates, and mortgage referred to in the complainant's bill, and that the defendant execute an acknowledgment of satisfaction and discharge of the mortgage herein mentioned and referred to, sufficient to authorize the cancellation of record of the said mortgage in the office of the auditor of Chehalis county, Washington," and for costs. From this decree the appeal herein is taken. The assignments of error raise the question whether the written contract was unconscionable, or made under false representations of the appellant's agent, which appellee believed at the time to be true; and upon the further ground as to whether the plea of ultra vires, which the court below held to be good, can be sustained.

1. Upon the first ground but little need be said. It is claimed that a pamphlet published by the appellant led the appellee to understand that there was no premium to be paid in connection with the loan. The testimony does not support this claim. Father Deichman, who was the convent's chaplain and business adviser, testified that he had read the pamphlet and all of the writings that were signed; that he wrote out the application for the loan, and witnessed the certificate for 70 shares of stock issued by appellant to appellee, etc. In his examination the witness testified as follows: "Q. State whether or not any premium was to be paid. A. Not that I remember." The testimony also shows that in all things in connection with this loan he took an active, zealous interest to obtain favorable consideration for the convent. It also shows that he was anxious to get the loan. "Q. Had you had any

personal correspondence with the company prior to the making of your application? A. No, sir, I had not; it was some time later on, when they came first. I started in with them to talk about insurance matters. I wanted to save the sisters the premium— what the agent would get. We were very anxious to get that money, and so we didn't care. We would consent to anything at that time." The uncontradicted testimony shows that appellee, for a period of eight years after the mortgage was executed, acquiesced, with full knowledge of all the facts, in the method adopted by appellant in applying the payments each month, in strict accordance with the written contract. This being true, we are of opinion that the court should not make a different rule for the application of such payments simply because appellee, at the time of the contract and loan, thought a different application should be made. It is unnecessary to further review the testimony. A careful examination of it shows that there are no questions involved in it which distinguishes it in any manner from the principles announced by this court in the Pacific States Savings, Loan & Bldg. Co. v. Green, 123 Fed. 43, 59 C. C. A. 167, and followed in the United States Savings & Loan Co. v. Parker, 123 Fed. 1007, 59 C. C. A. 683, upon substantially similar facts. In the Green Case this court said:

"The general rule is, we think, well settled that a court of equity is not authorized to set aside and annul a contract made by parties with full knowledge of all the terms and conditions of the same, without it is clearly and satisfactorily shown that there was fraud, oppression, or undue advantage taken with reference to its execution. * * * We understand the law to be that payments of premiums on the stock are not premiums made upon the loan, but are to be applied solely to the credit of the shares."

Numerous authorities were there cited in support of the views therein expressed. The contract, if enforceable at all, is to be enforced as the parties made it, and its terms and provisions must govern their rights.

2. Conceding, for the purpose of this opinion, that the appellee was not authorized to become a shareholder in the stock of appellant for the purpose of securing a loan of money to enable it to build a convent on the land mortgaged, it does not necessarily follow that the court should set aside and annul the contract on that ground. The mortgage in this case was given under and in pursuance of the contract made between the parties. It was an executed contract. Appellant paid $7,000 to appellee, and did everything which it agreed to do. Appellee has received the fruits and benefits of the contract, but has not paid all the money agreed to be paid thereon by the terms of the written contract. Can it now successfully defeat the contract by the plea of ultra vires? It must be remembered that we are called upon to deal directly with the rule as applied to private corporations, where the contract has been fully executed by the party against whom the plea of ultra vires is invoked, as distinguished from the rule which is applied to cases of executory contracts or contracts made by public or quasi public corporations, which owe important duties to the public. The general rule applicable to the case in hand is expressed in 5 Thompson on Corporations, § 6016, as follows:

"The great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it."

And numerous authorities are there cited in support of this text.
In Blue Rapids Opera House Co. v. Mercantile Building & Loan Ass'n (Kan. Sup.) 53 Pac. 761, the opera house company had taken stock in the building and loan association, and obtained a loan to finish the construction of the opera house.  It got the money, and gave its bond and mortgage.  It will thus be seen that the case is directly in point.  The court said:

"The opera house company contends that its officers were without power to make the loan by taking stock in the building and loan association.  Whatever may have been the powers of the officers of the opera house company in this respect, the defense of ultra vires is not available to the company. The contract has been in good faith fully performed by the other party, the money has been paid, and the opera house company has had the full benefit of the payment and the performance of the contract.  The law now interposes an estoppel, and will not permit the validity of the loan contract to be questioned.  Railroad Co. v. Johnson, 58 Kan. 175, 183, 48 Pac. 847."

In Bowman v. Foster & Logan Hardware Co. (C. C.) 94 Fed. 592, 596, the court based its decision upon other grounds, but announced the rule upon the point here under discussion as follows:

"Whether it be true that an ordinary corporation, authorized by its charter to do a general merchandise business, can become a shareholder in a building and loan association, in order to borrow money to carry on its business, in the opinion of the court is not decisive of this case; indeed, the question is not necessary to its decision.  If it be admitted that it cannot, still, underlying this question is another, about which there cannot be much doubt in the light and trend of modern decisions.  The Foster & Logan Hardware Company complied with the rules and regulations required by the plaintiff building and loan association in order to become a borrower, and executed the note and mortgage sued on, and accepted the stock.  It used the money so borrowed in constructing its business house.  So far as the plaintiff building and loan association was concerned, the contract was an executed contract.  All the plaintiff building and loan association could do was done.  Can the Foster & Logan Hardware Company, after having received and used the plaintiff's money under this executed contract, be heard to say that it had no power to become a member of the association, and that its act was therefore ultra vires?  I think not. * * * The court is of opinion that the Foster & Logan Hardware Company, if in existence, and a defendant, could not avail itself of the plea of ultra vires."

See, also, Kadish v. The Garden City Eq. L. & B. A., 151 Ill. 531, 538, 38 N. E. 236, 42 Am. St. Rep. 256; The Sherman Center Town Co. v. Morris, 43 Kan. 282, 284, 23 Pac. 569, 19 Am. St. Rep. 134; Booth Bros. v. Baird (Sup.) 82 N. Y. Supp. 432, 435; Schrimplin v. Farmers' Life Ass'n (Iowa) 98 N. W. 613, 616; Hunt v. Hauser Malting Co. (Minn.) 96 N. W. 85, 87, and authorities there cited.
Appellee relies principally upon Parsons v. Tacoma Smelting & Refining Co., 25 Wash. 492, 65 Pac. 765, but that case is wholly unlike the case at bar in this, that there the suit was brought by a stockholder of the corporation to declare a certain transaction invalid on the ground that the corporation had no power or authority in the premises.  No such question as is here presented was

there raised or discussed. It is simply a case that upholds the general proposition which we have conceded.

The decisions in the state of Washington, wherever the question has been raised, are to the effect that, where a corporation has accepted the benefits of a contract, it is estopped from denying the validity of the instruments by which those benefits came to it. In Tootle v. First National Bank, 6 Wash. 181, 33 Pac. 345, the court held that, where a banking corporation has received and retained the benefits of a transaction, it cannot set up the plea that the contract was ultra vires; and cited, in support of this principle, 2 Morse on Banks and Banking (3d Ed.) § 740; 2 Beach, Priv. Corp. § 425; 2 Morawetz, Priv. Corp. (2d Ed.) § 688; Green's Brice's Ultra Vires, 729, note a; Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; and further stated that: "This rule is so well established that it is the work of supererogation to quote authorities to sustain it."

In Allen v. Olympia Light & Power Co., 13 Wash. 307, 309, 43 Pac. 55, 56, the court said:

"The second contention, viz., the want of authority in the officers to make the note in suit, will not serve the defendant when it appears, as it does from the pleadings. in this case, that it had the benefit of the money which it received by reason of the execution of the note. This court has often decided that corporations cannot escape their honest obligations by pleading want of authority to execute a contract, where, as a result of the contract, the corporation had received the benefit of the money obtained."

The same doctrine was followed in City of Spokane v. Amsterdamsch Trustees Kantoor, 22 Wash. 172, 180, 60 Pac. 141, 143. The court, after citing Thomas v. Railroad Co., 101 U. S. 71, 25 L. Ed. 950, said:

"It seems that the rule stated in Parish v. Wheeler, 22 N. Y. 494, has been applied by this court, and where a corporation has received benefits under a contract it is estopped from saying it has no power to make it."

See, also, Dexter, Horton & Co. v. Long, 2 Wash. St. 437, 440, 27 Pac. 271, 26 Am. St. Rep. 867; Wheeler, Osgood & Co. v. Everett Land Co., 14 Wash. 630, 633, 45 Pac. 316.

The decisions in the state of Washington are in line with the decisions herein cited from other states. If, under the facts of this case, appellee is estopped from pleading that the contract was ultra vires, then it follows that, if the contract was valid, it can be enforced. A different contract cannot be made between the parties simply because of the plea of ultra vires, unless the plea can be held good. The authorities in the state of Washington did not change any of the terms of the original contract or agreement. The parties were held estopped from asserting the plea of ultra vires solely because they had received money or property on the faith of the contract or transaction, and could not, under circumstances similar to the case at bar, in equity and good conscience deny their contract, because they were estopped by their own acts and conduct from doing so.

The decree of the Circuit Court is reversed, and cause remanded, with directions to the Circuit Court to enter a decree of foreclosure in favor of appellant herein for the amount found to be due under the contract, consistent with the views expressed in this opinion.

GILBERT, Circuit Judge (dissenting). The appellee was a benevolent corporation, formed for the establishment and maintenance of a hospital.for the care and treatment of the sick and injured, and the maintenance of a school for educational purposes, with the powers necessary to carry out those purposes. It is not disputed that under the laws of the state of Washington a corporation is not permitted to subscribe for or hold stock in another corporation. This was first held in Denny Hotel Co. v. Schram, 6 Wash. 134, 32 Pac. 1002, 36 Am. St. Rep. 130. In Parsons v. Tacoma Smelting & Refining Co., 25 Wash. 492, 65 Pac. 765, it was held that such power did not exist under the statutes of that state, even where assumed in the articles of incorporation under a general law providing for the formation of private corporations and permitting them to enumerate in their articles the powers to be exercised by them.

The appellant relies on cases such as Bowman & Foster v. Hardware Co. (C. C.) 94 Fed. 592, in which it is held that where a contract made by a corporation in excess of its granted powers has been executed, and the corporation has received the benefit thereof, the law interposes an estoppel, and will not permit the validity of the contract to be questioned. And such may be said to be the doctrine of perhaps the majority of the state decisions. But in the Supreme Court of the United States it is not so held. In Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 59, 60, 11 Sup. Ct. 478, 488, 35 L. Ed. 55, the court said:

"A contract of a corporation which is ultra vires in the proper sense— that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature—is not voidable only, but wholly void and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

The doctrine of this case is affirmed in McCormick v. National Bank, 165 U. S. 550, 17 Sup. Ct. 433, 41 L. Ed. 817, and California National Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198. Nor does the Supreme Court, in so holding, distinguish between cases of quasi public corporations and private corporations. In De la Vergne v. German Savings Inst., 175 U. S. 58, 20 Sup. Ct. 25, 44 L. Ed. 62, the court said:

"Whatever doubts might have been once entertained as to the powers of corporations to set up the defense of ultra vires to defeat a recovery upon an executed contract, the rule is now well settled, at least in this court, that, where the action is brought upon the illegal contract, it is a good defense that the corporation was prohibited by statute from entering into such contract, although in an action upon a quantum meruit it may be compelled to respond for the benefit actually received."

In Ward v. Joslin, 186 U. S. 142, 22 Sup. Ct. 807, 46 L. Ed. 1093, the court applied the doctrine to a contract made by a private corporation, the Western Investment Loan & Trust Company of Kansas, and said:

"The rule in this court is that a contract made by a corporation beyond the scope of its powers, express or implied, cannot be enforced or rendered enforceable by the application of the principle of estoppel."

The extent to which the Supreme Court has applied equitable relief in cases of ultra vires contracts made by corporations has been to require the specific return of property or money parted with on the faith thereof (Salt Lake City v. Hollister, 118 U. S. 263, 6 Sup. Ct. 1055, 30 L. Ed. 176), or to compel compensation for property not returned (Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 60, 11 Sup. Ct. 478, 35 L. Ed. 55; Pullman Palace Car Co. v. Transportation Co., 171 U. S. 156, 18 Sup. Ct. 808, 43 L. Ed. 108).

This established rule of the Supreme Court must control the decision in the present case, unless the Supreme Court of the state of Washington had, prior to the time when the contract in the present case was entered into, announced a different rule as to contracts ultra vires made by corporations of that state. In Dexter, Horton & Co. v. Long, 2 Wash. St. 435, 440, 27 Pac. 271, the court held that where money was obtained by a corporation upon its securities, which was ultra vires, but the money was applied for the benefit of the company with the knowledge and acquiescence of the shareholders, the company and the shareholders are estopped to deny the liability of the company to repay it. In Tootle v. First National Bank, 6 Wash. 181, 33 Pac. 345, the bank had received property of the value of more than $7,000, transferred to it by a bill of sale which it claimed was in payment of a debt due it of $2,000. The court found that the bill of sale was intended as a mortgage to secure the payment of $2,000, and, in answer to the plea of the bank that the transaction was beyond its powers, the court said:

"It is not necessary to determine whether the contract was ultra vires, for it was not immoral. It was fully performed by the other party, and the bank received and retained the benefits, and in such a case the plea of ultra vires is unavailing. * * * The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong."

The consideration of the Washington decisions might properly end here, for the foregoing are all the decisions of the Supreme Court of that state on that subject prior to the execution of the contract in controversy. This court is not bound by the decisions of that court, after rights accrued under the contract, where such decisions conflict with the rule of the Supreme Court of the United States. Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517. But it is not perceived that in any of such later decisions, when viewed in the light of the facts presented in each case, the doctrine of the decisions above noted has been departed from. In Allen v. Olympia Light & Power Co., 13 Wash. 307, 43 Pac. 55, the corporation had, for value received, executed its negotiable promissory note for $8,000, and the note had been indorsed to the plaintiff. The bank, when sued upon the note, made the defense of want of authority. The court said:

"The want of authority in the officers to make the note in suit will not serve the defendant when it appears, as it does from the pleadings in this

case, that it had the benefit of the money which it received by reason of the execution of the note. This court has often decided that corporations cannot escape their honest obligations by pleading want of authority to execute a contract, where, as a result of the contract, the corporation had received the benefit of the money obtained."

In Spokane v. Amsterdamsch Trustees Kantoor, 22 Wash. 172, 60 Pac. 141, the suit was brought by a stockholder to set aside a conveyance by which the corporation had transferred all its property to another corporation, and the latter had borrowed from the respondent $300,000. The contention was that one corporation could not sell all of its property to another; that such a transaction was ultra vires. The court in that case approved the doctrine that the executed dealings of corporations must be allowed to stand for and against both parties when the plainest rules of good faith require it. It is true that in that case the court made use of these words:

"It seems that the rule stated in Parish v. Wheeler, 22 N. Y. 494, has been applied by this court, and, where a corporation has received benefits under a contract, it is estopped from saying it has no power to make it."

What the court meant by this utterance is shown by its own prior decisions cited in support of it, and by the case of Parish v. Wheeler, the doctrine of which it so expressly adopted. That was a case in which it was held that a corporation cannot defend itself against a claim for money paid at its request to one who advanced the price of a steamboat purchased for it, on the ground that the purchase was ultra vires. The court in that case said that the plea of ultra vires was not to be entertained, especially so long as the corporation "retains, and insists upon retaining, all the benefits of the contract"; and later in the opinion the court added:

"The executed dealings of corporations must be allowed to stand for and against both the parties when the plainest rules of good faith so require."

Again, in Graton & Knight Mfg. Co. v. Redelsheimer, 28 Wash. 370, 377, 68 Pac. 879, 881, the court said:

"A corporation has sometimes been permitted to disavow an unexecuted contract which it has attempted to enter into, because beyond the scope of its charter powers. But the doctrine of ultra vires, so far as we are aware, has never been invoked successfully when the purpose was to recover money paid by it for the purchase of goods which it had received and appropriated to its own use."

In each of these cases the plea of ultra vires was invoked to enable the corporation to retain the money of another without repaying it, or the property of another without paying for it. The controlling consideration in holding it estopped so to do was the gross wrong and injustice of permitting it thus to escape its assumed liability. Such is not the present case. The appellee does not retain from the appellant money which, ex æquo et bono, it ought to repay. It borrowed from the appellant $7,000, and mortgaged its property to secure payment thereof. It entered into the contract of loan on the representation of the appellant's agent, fortified by the printed matter contained in a pamphlet which it published and circulated, and which, while it did not specifically

so, promise, stated that it might safely be estimated that payment of 90 installments of the amount specified would be sufficient to extinguish all liabilities of the borrower, and illustrating the expected result by figures showing that 90 installments would amount in the aggregate to only a trifling sum in excess of the principal of the loan and simple interest thereon at the rate of 7 per cent. per annum. That the appellant's expectations were not realized is owing to no act or default of the appellee, but solely to the appellant's misfortunes or to mismanagement of its corporate business, a business in which the appellee, although nominally a stockholder, had no voice or part. The appellee, instead of paying 90, has paid 96 of such monthly payments, amounting in all to $11,263. These payments, applied on the loan, repay the principal thereof and $4,263 interest. The amount so paid in gross would be tantamount to a repayment of the $7,000 principal, and 7.61 per cent. per annum thereon, if the principal had been repaid at the end of the 96 months. But when we come to consider that in fact the loan and interest were repaid in installments of $119.35 per month, covering the entire period of 96 months, which installments included monthly payments of principal as well as of interest, it will be seen that the rate of interest actually received was much greater than 7.61 per cent. per annum, and amounted to more than 15 per cent. per annum. The inquiry then suggests itself, what has the appellee received out of this extortionate contract which in equity it ought to restore to the appellant? It retains none of the money of the appellant, and none of its stock. The money has been paid back with a very high rate of interest, and the stock was assigned to the appellant at the time when the contract was made. In Thompson on Corporations, § 5999, it is said:

"Where, as in the case of strictly private corporations, such as mining, manufacturing, insurance, and commercial companies, no question of public policy is involved, but the question is merely one concerning the rights of stockholders and creditors not to have the corporate funds dissipated by ultra vires engagements, then there will be no right of rescission after a part performance by one of the parties; but that, in the case of any species of corporation, whether public or private in its nature and objects, where a principle of public policy is involved, and where a continued execution of the contract involves a continued violation of the law, then there will always be a right of rescission by either party to the contract, upon a restoration of what he has obtained under it."

The contract in this instance being legal in part and in part illegal, the installments of money paid by the appellee are properly to be deemed payments only of its legal obligation. This leaves the whole of the appellant's demand as it now stands—the demand for the further sum of $3,375—to rest upon the illegal promise of the appellee to pay assessments on the stock. On what principle can it be said that the appellee is now estopped to deny that obligation? An estoppel in pais is defined to be a preclusion of a person to deny a fact which he has by his act induced another to believe, and act upon to his prejudice. But wherein has the appellant acted upon the contract in the present case to its prejudice?

It parted with a sum of money, but it has received it back with interest at 15 per cent. per annum? It has received more out of the transaction that it expected to receive, according to its own representations made at the time of making the loan. If there be an estoppel here, it must rest not on the ground that the appellee retains benefits from the contract, but on the ground that it received and repaid with excessive interest the appellant's money. The appellee, concerning its power to subscribe stock, made no representations on which the appellant relied. Its want of authority to subscribe stock did not consist in any restriction contained in its articles, unknown to the appellant, nor in the failure of its directors to authorize its act. It consisted in the law and public policy of the state under which the appellee had its existence. Of that law both parties were equally bound to take notice. I find nothing in the decisions of the Supreme Court of the state of Washington which requires the denial of the relief which the appellee prayed for—the cancellation of its mortgage upon the records—and nothing to sustain the decision of the majority of this court that in equity the appellee should be subjected to the further burden of paying the $3,375.40 which the appellant demands in satisfaction of its mortgage.