### VERMONT LOAN & TRUST CO. v. DYGERT et al.

(Circuit Court, D. Idaho. · June 3, 1898.)

1. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONSTRUCTION OF STATUTE.
   Where a suit involves rights under a contract affected by a state statute, and entered into before such statute had been construed by the state courts, a federal court is not bound by a subsequent construction by the state courts, but will exercise an independent judgment.

2. USURY—WHAT LAW GOVERNS—NOTES SECURED BY MORTGAGOR.
   Notes dated in Washington, and by their terms payable there, are governed by the law of that state as to usury, though the contract was made in Idaho, and the notes are secured by mortgage on property there, in the absence of evidence of a design to evade the usury laws of the latter state.

3. MORTGAGE—FORECLOSURE—PENALTY FOR DEFAULT.
   There is no ground on which a court can refuse to enforce the payment of interest on the debt secured at the rate of 12 per cent. after maturity, where such is the contract of the parties, and the note is not usurious.

This was a bill for the foreclosure of a mortgage.

A. A. Gallagher, for complainant.

S. C. Herrin, for defendants.

BEATTY, District Judge.    This action is based upon a mortgage on land in Idaho, given to secure a bond or note for the sum of $3,400, and two separate notes or coupons, one for $221, and the other for $202.51, for the payment of interest to become due on the principal note, all dated at Spokane, Wash., November 17, 1892, and expressly made payable at said place, all the notes to draw 12 per cent. annual interest after maturity. The complainant had agents in Idaho, who transacted there all the business connected with this loan, including the exchange of all papers and the payment of all interest coupons, except that it appears one interest coupon in controversy was stamped "Paid" at the office of complainant, in Spokane.

The chief defense to this action is that the contract is usurious by the laws of Idaho, by which it is claimed it must be construed. Generally, this court will follow the construction of the law as rendered by other co-ordinate federal courts, but it must follow that by the supreme court of the United States. The defense, invoking the general rule of comity by which United States courts follow the construction given of state statutes and constitutions by the state courts, asks that the same rule be applied to this case that prevailed in Trust Co. v. Hoffman, 49 Pac. 315, rendered by the supreme court of Idaho long after the contract in this case was entered into. It seems clearly settled that when a contract, based upon some state statute, is entered into by the parties before any construction of such statute is made by the state courts, the United States courts are not bound by a construction given the statute by the state court after the making

of the contract; but, while "leaning to an agreement with the state courts," they will exercise an independent judgment in the construction of such statute. Carroll Co. v. Smith, 111 U. S. 562, 563, 4 Sup. Ct. 539; Anderson v. Santa Anna Tp., 116 U. S. 361, 362, 6 Sup. Ct. 413; Pleasant Tp. v. Insurance Co., 138 U. S. 67, 11 Sup. Ct. 215; Folsom v. Township Ninety-Six, 159 U. S. 627, 16 Sup. Ct. 174; Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 334, 76 Fed. 301; Cæsar v. Capell, 83 Fed. 427; and many other cases. It follows that upon the question whether this contract must be construed by the laws of Washington, or by those of Idaho, this court must reach its conclusion independent of the state decision referred to.

It is expressly stated in the principal note that "both principal and interest notes are payable at the office of the Vermont Loan and Trust Company at Spokane, Washington"; and the coupon notes say that they are payable "at the office of the Vermont Loan and Trust Company." It is generally held that all contracts must be construed according to the law of the place of contract, unless the parties themselves agree upon some other place, and, when they do, their agreement will be enforced. So clearly does this seem the settled law that it is deemed unnecessary to discuss it or cite authorities, but those curious to further pursue the subject will find numerous citations in Coghlan v. Railroad Co., 142 U. S. 101, 12 Sup. Ct. 150. As the parties contracted for the payment of the notes in Washington, the laws of that state must govern their construction. Four hundred dollars of the principal note was for interest, which, added to the 6½ per cent. interest provided for by the coupon notes, makes, for the time the notes were given, 10 per cent. annual interest. After maturity all the notes were to draw 12 per cent., but neither of these rates is in violation of the law of Washington. As this contract was made in Idaho, if it appeared that it was made payable in Washington to avoid the usury law of Idaho, the contract of the parties in that particular would be disregarded, and it would be governed by the laws of Idaho. As, however, the complainant alleges that the notes were made payable in Washington for its convenience in transacting its business, and not for the purpose of evading the laws of Idaho, which not being denied by defendants it must be concluded that there was no bad faith in making the notes payable at Spokane, and it must follow that they should be construed according to the laws of Washington, under which they are not usurious.

The defendants complain that the claim of $350, attorney's fees, is unconscionable; but that amount is less than 10 per cent. on the sum claimed, which is not usually regarded by the profession as exorbitant. They complain also of the 12 per cent. interest on the notes to be paid after maturity, but this, while less than the law of Idaho allows, was as a penalty for not paying at maturity, which defendants might have avoided by complying with their contract, but defendants agreed to pay such attorney's fees and interest. They made the contract. It is too late to complain that it was a bad one. Reckless borrowing and contraction of debts is the bane of this country, and too often, after parties have made bad contracts, they come to the courts asking their help, even though they must violate the

law in granting it. It has been said that the speediest way to procure the repeal of a bad law is by its strict enforcement. Perhaps the way to discourage the borrowing mania of the people is to strictly apply the law to all such contracts. At any rate, the courts cannot violate the law to lighten the burden of improvident contracts.

As stated, all the transactions of defendants in this matter were with complainant's agents in Idaho. The complainant was known to defendants only in name, and they dealt entirely with the agents. These agents, in settlement of a claim defendants had against complainant growing out of a lease of some other of its property by them, agreed to cancel the coupon for $221 included in this suit, and it seems that it was marked "Paid" or "Canceled" by the office at Spokane, and through the agents delivered to defendants as paid. The complainant claims it was an error, and by some representation these agents induced defendants to turn it over to them for some further examination. As the coupon had been delivered to defendants as paid, as there is no satisfactory explanation of the alleged error of cancellation, as the defendants, through this lease contract of complainant's property, were the losers to the amount of such coupon, as such agents appear to have been general agents in Idaho for complainant, and intrusted with full authority concerning its business in Idaho, and as they agreed with defendants to such payment, that coupon will be held as paid. The complainant is entitled to a judgment against defendants for the principal amount of $3,400, and the one coupon note of $202.51, with interest on each at 12 per cent. per annum from the 1st day of December, 1897, for the sum of $350, attorney's fees, for costs, and the foreclosure of the mortgage sued upon; and it is so ordered.