### PACIFIC STATES SAV., LOAN & BUILDING CO. v. GREEN et al.

(Circuit Court, D. Oregon. March 12, 1902.)

BUILDING AND LOAN ASSOCIATIONS—CONTRACT WITH BORROWING STOCKHOLDER—VALIDITY.

By a contract between a building and loan association and a stockholder the latter sold, assigned, and transferred the 110 shares of stock owned by her, of the par value of $100 each, and which she obtained at the same time, to the association, absolutely, in consideration of its advancement to her of $5,500, "by way of anticipation of the value at their maturity" of the 110 shares. It was further provided that $5,500, being the par value of 55 shares, was given to the association as a premium. The bond required the borrower to repay the loan within 7 years, together with interest, and the full amount of the premium, provided the stock had at the time matured and become worth par, and, if not, so much of the premium as had then been earned, or, in default of such payment, to keep up the dues on the 110 shares until they matured, in addition to the payment of interest. Held, that the transaction was merely one of loan, the borrower retaining no interest as a stockholder in any case, and that, since the association would receive, in case the stock was paid out until it reached par value, as contemplated, double the amount loaned, besides interest thereon, the contract was unconscionable, and would not be enforced by a court of equity by a foreclosure of the mortgage given to secure it, for the sum claimed to be due thereunder, amounting to $2,600, after the borrower had paid to the association a sum exceeding the amount borrowed, with interest.

In Equity. Suit to foreclose mortgage. On demurrer to bill.

G. W. Baker and G. W. Allen, for plaintiff.
Lionel R. Webster, for defendants.

BELLINGER, District Judge. This is a suit to recover $2,594.90, and to foreclose a real estate mortgage given, as is alleged, to secure said sum. The complaint alleges, in effect, that on February 23, 1893, the defendant Lizzie A. Green was the owner of 110 shares of the capital stock of plaintiff, of the par value of $100 per share, for which she agreed to pay 60 cents per month per share, or $66 per month, until said shares, "by said payments and the accumulations allotted to the same by reason of profits earned, would become matured, and of the par value of $100 each;" that on the same day said defendant applied for a loan of $5,500, and accompanied such application with a bid for the loan, which bid was as follows:

"Amount of money desired as loan, $5,500. Applied for Feb'y 23rd, 1893. I hereby agree to hold 110 shares of stock in the Pacific States Savings, Loan and Building Co., and to continue payments of installments on said stock until the same shall mature, or until the loan is otherwise paid. I also hereby agree to pay said company a bonus of fifty-five shares of the stock above

referred to, as a consideration for the loan of $5,500 applied for. Lizzie A. Green [Signature of applicant]. February 23rd, 1893. Witness: I. C. Hicks."

—That the plaintiff company, upon or prior to March 10th, accepted said bid, and agreed to loan Lizzie A. Green the sum of $5,500 in accordance with the terms and conditions mentioned, and according to the terms and conditions of a certain indenture of bond which was, on the 15th of March, 1893, executed by Lizzie A. Green and James W. Green, her husband, a copy of which is made a part of the complaint. This bond was secured by a mortgage upon certain real estate, represented in the application for the loan to be of the cash value, with improvements, of $12,000. The bond recites that whereas the company only loans its money to its stockholders, and only in proportion to the amount of stock held by such stockholders, and that whereas Lizzie A. Green is the owner of 110 shares, and has bid the sum of $5,500, being the par value of 55 shares of said stock, "as and for a premium for the advancement by said company of $5,500 by way of anticipation of the value at their maturity of 110 shares of the capital stock of said company now owned by said Lizzie A. Green, and whereas the said company, in consideration of said premises, and by way of said anticipation, has this day advanced to said Lizzie A. Green and James W. Green $5,500, now, therefore," etc. Then follows the obligation of the bond, which will be referred to later.

From what is stated so far, it appears that the transaction was one of loan, and that the stock subscription was merely a mode adopted by the parties of making the loan. According to the recital in the bond, the $5,500 loaned was an "advancement" by the company in anticipation of the value at their maturity of the 110 shares of stock subscribed for by Lizzie A. Green. In other words, the 110 shares of matured stock were valued at $5,500, and by way of anticipation of such value there was an "advancement" of that sum. One-half of the 110 shares of stock were, as a part of the transaction by which they were acquired, given back to the company as a "bonus" for the loan or advancement. The remaining 55 shares are treated as pledged to the company, but by the terms of the bond executed on March 10th the entire 110 shares were "sold, assigned, transferred, and set over" to the company absolutely, no right or interest whatever remaining in the subscriber. This is in keeping with the theory of an "advancement" by the company of the value of the 110 shares at their maturity, but if the defendant is obligated to pay the $66 per month until the 110 shares become, by such payments and earnings, fully paid, and of the par value of $100 per share, together with interest on such loan or advancement, the contract becomes one of unusual hardship, and such as a court of equity will not enforce.

The obligation of the bond is that the Greens are to pay, on or before seven years, the sum of $5,500 and the full amount of the premium, if said 110 shares shall have matured and become worth par, or, in case said stock has not matured, then so much of said premium as may have been earned at the time the whole of the sum advanced is repaid, together with interest, etc., or, in default of such

payment, then the alternative is to pay the $66 each month, "as and for the monthly dues on said one hundred and ten shares, now owned by said Lizzie A. Green, and by her hereby sold, assigned, transferred, and set over to said company," together with $27.50 each month as interest, and also all fines and charges until said stock becomes fully paid in and of the par value of $100 per share, and shall then surrender said stock to the company. If by the word "premium" in the provision in this bond requiring the Greens to pay the sum of $5,500 and the full amount of the premium, if the said 110 shares shall have matured and become worth par, or in case said stock has not matured, then so much of said premium as may have been earned at the time the whole of the advance is repaid, is meant the par value of the 55 shares bid as a bonus, or the amount of the installments paid at the time the loan is repaid, the stock not having matured, it results that, if the stock has matured, the full value of $5,500 is required to be paid as a premium in addition to the repayment of the sum of $5,500 loaned or advanced, or, if the stock has not matured, then whatever has been paid in installments on account of this stock must go to the company in addition to the repayment of the money loaned and interest. The other alternative of the bond is the payment of the monthly installments, together with interest installments, until the entire 110 shares are matured, or are of par value, and the surrender of the 110 shares to the company. Between these alternatives, there is no choice. In either case the company will receive double the amount advanced.

The proviso in the bond by which, upon a six months' default in the payment of installments, the company may elect to declare the loan and the premiums then earned due, and recover the same, less the withdrawal value of said 110 shares, allows nothing to the borrower for the withdrawal value of the 110 shares above the debt. This is consistent with the recital in the bond that the $5,500 was an advancement by the company by way of anticipation of the value at their maturity of 110 shares of the capital stock owned by Lizzie A. Green. This recital, as well as the condition in the bid by which the defendant borrower agreed to hold 110 shares and to continue payments of installments thereon until the same shall mature, or until the loan is otherwise paid, shows that all installments paid on the 110 shares were so much paid on the loan, or on account of it. If the loan was "otherwise paid" the obligation to pay installments ceased. It was not intended that the loan would be "otherwise paid," and yet this phrase is cumulative of what is plain enough without it,—that the stock subscription and holding and the payments to be made nominally on that account were merely the means of repaying the loan and of securing an unconscionable bonus besides. In this connection consider this allegation in the complaint: That thereupon, upon the execution of the bond by Lizzie A. Green and her husband, the said plaintiff advanced to said Lizzie A. Green the said sum of $5,500, "which was to be repaid by the maturing of the shares which she held in said plaintiff corporation by making the monthly payments thereon as specified in her said application and

the indenture of bond executed by her and her said husband." The monthly payments to be made as specified in the bond and in the bid which accompanies the application are required to be on the 110 shares. The allegation that the $5,500 was an advancement by way of anticipation of the value at maturity of 110 shares of the company's capital stock is in keeping with what elsewhere appears,—that the defendant Lizzie A. Green was to have merely a borrower's, not a stockholder's, interest in the company; that the stock subscribed for by her at par value would only repay the advancement which had been made to her.

Upon what pretense of fair dealing the company intended that $5,500 advanced by it, and upon which it had received interest, was to represent the value of shares actually worth $11,000, does not appear. It is argued that the defendant Lizzie A. Green became a stockholder, and that the payments made by her and sought to be enforced against her in excess of her debt are in the nature of a stock investment. But the facts as they already appear do not support this contention. Her so-called stock conferred no rights upon her. It merely imposed an obligation upon her, which the most guileless right-minded person in the world could not be expected to assume in any transaction less devious and complicated than that in question. And so it transpires that although she "sold, assigned, transferred and set over," absolutely and unconditionally, to the company the 110 shares of stock which she is described as holding, although neither the conditions of the bond nor the allegations of the complaint admit of any present interest, or of any possible interest at any time, on her part in the company, and although she has paid $5,544 on the principal sum of $5,500 advanced or loaned, or, what amounts to the same thing, has paid installments to that amount to mature stock by which the sum advanced or loaned was to be repaid, and has paid interest meanwhile on the unpaid balance of the principal debt at the rate of above 12 per cent. per annum, yet a decree is sought against her in a court of equity for $2,594.90, with $250 additional as an attorney's fee, for which a foreclosure is prayed upon property stated in the application for the loan to be worth $12,000.

The question of usury was discussed at some length on the argument, and a recent decision of an Eastern court, in which a contract like the one in suit was enforced, was cited. In that case the contract was held not to be usurious. That question is not necessary to be considered here. If it was a mere question of an interest charge, and the rate appeared to me to be unconscionable, there could be no relief in this court that included it.

The fact is that this so-called stock subscription is not in any proper sense a stock subscription at all. It is a mere expedient to secure unconscionable terms in a money-loaning transaction. The penalty in a bond may be avoided by a performance of the condition upon which the penalty depends, but in this case there was no such avenue of escape for the hapless borrower. By prompt repayment of the advancement—a payment otherwise than by maturing the stock—she would still lose the installments that had been paid in the meantime

and were then due. But if unable to make prompt payment the exaction would be increased, and might, according as the company saw fit to act, equal the principal sum advanced, not taking into account the interest payments made. Among the earliest exercises of the equity jurisdiction was the relief it afforded against penalties and forfeitures, and so far there is no case in which its jurisdiction has been invoked to enforce either. What is asked in this case is something quite as unconscionable as a penalty,—a thing that equity will not enforce, and will not permit, in any case coming within its jurisdiction.

The complainant credits the defendant Lizzie A. Green with the value of 55 shares of so-called pledged stock, at $4,214.10. The remaining 55 shares are of course donated or premium stock. There is, therefore, no pretense that this defendant has, or is to have, any interest as a stockholder on account of payments made and sought to be enforced against her in excess of the loan and interest. As a matter of fact, there is no distinction between pledged and other stock. The fiction adopted by the company is that 55 shares were given to the company as a bonus and the remaining 55 shares were given as a pledge, but it all went to the company by absolute assignment and transfer. There is nothing in the conditions of the bond that admits of any interest in Lizzie A. Green in the so-called pledged stock. The transaction was one of loan, and nothing else, and equity, which looks to the intent, not the form, must so regard it. The installment payments of $66 per month were payments on the loan. These payments continued for seven years, during which interest installments were also paid. There has thus been paid, as already stated, $5,544 and interest.

The complainant is entitled to its loan or advancement, and interest. More than this it has had. More than this it is not entitled to. It cannot, in a court of equity, collect installments in the nature of premiums upon stock, subscribed for merely to qualify the subscriber to borrow from the company, and which, by the terms of the agreement between the parties, was to be, and was in fact, transferred to the company, and of which the company has at all times been and now is the absolute owner.

Demurrer to the bill of complaint is sustained.