ALEXANDER et al. v. SOUTHERN HOME BUILDING & LOAN ASS'N.

(Circuit Court, D. South Carolina.    February 4, 1903.)

1. JURISDICTION OF FEDERAL COURTS—ANCILLARY SUIT BY RECEIVER.

When a Circuit Court of the United States has obtained jurisdiction over a corporation by the filing of a creditors' bill and the appointment of a receiver, a suit by the receiver for the collection of assets is cognizable in such court, regardless of either the citizenship of the parties or the amount in controversy.

2. BUILDING AND LOAN ASSOCIATIONS—ACCOUNTING WITH BORROWING STOCKHOLDER.

Insurance premiums paid by a borrowing stockholder in a building and loan association on the property mortgaged, although required by the contract, are for his own benefit, and cannot be applied in liquidation of the debt.

3. SAME —LAWS GOVERNING—USURY.

Where both the subscription and loan contracts of a stockholder in a building and loan association are dated and made payable at the home office of the association, they are governed by the laws of the state of such home office.

4. SAME—MISTAKE OF FACT—ERRONEOUS STATEMENT THAT LOAN WAS PAID.

A statement sent by a building and loan association to a stockholder, by mistake, that his loan was paid in full, will not bind the association, where it was at once recalled, and no rights intervened.

5. SAME—CONSTRUCTION OF CONTRACT—ACCOUNTING WITH BORROWING STOCKHOLDER.

The bond of a borrowing stockholder in a building and loan association provided that "upon final settlement with the association it is to retain as installment on the said stock and interest no greater sum than the sum actually advanced, with interest thereon at the rate of eight per cent. per annum." *Held*, that such provision governed the rights of the parties in an accounting after the insolvency of the association, but did not entitle the stockholder to credit on the debt for premiums paid.

In Equity.    On ancillary bill by receiver for foreclosure of mortgage.

Ellis, Wimbish & Ellis and T. W. Bacot, for petitioner, receiver.
Ellis G. Graydon, for respondent.

SIMONTON, Circuit Judge.    The original bill was filed in the Circuit Court of the United States for the Northern District of Georgia by M. A. Alexander against the Southern Building & Loan Association, a corporation of the state of Georgia.    The purpose of the bill was to administer and wind up the affairs of the said association.    That court assumed jurisdiction, appointing John T. Pendleton receiver, and proceeded to administer the affairs of the association.    A part of the assets being situate within this district, an auxiliary bill was filed in this court between the same parties as in the suit in the Northern District of Georgia.    This court assumed jurisdiction of the auxiliary bill, and, following the practice and exercising

¶ 1. Supplementary and ancillary proceedings in federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

¶ 2. What law governs usury in contracts of building and loan associations, see note to Kirlicks v. Interstate Building & Loan Ass'n. 51 C. C. A. 319.

¶ 5. See Building and Loan Associations, vol. 8, Cent. Dig. § 63.

the comity existing between the several Circuit Courts of the United States, recognized and confirmed the appointment of said receiver appointed in the Circuit Court of the Northern District of Georgia. The auxiliary cause having been filed in this court, ancillary proceedings began for the purpose of realizing the assets of the defendant association. Among these assets is a bond of Mrs. N. E. Osborne, a citizen of South Carolina, purporting to be secured by a mortgage of a tract of land in Abbeville county, S. C. Thereupon the receiver, John T. Pendleton, filed by way of ancillary proceedings his bill against the said Mrs. N. E. Osborne. His bill alleges: That she had become and was a subscriber to five shares in the said Southern Building & Loan Association, of the par value of $100 each. That pursuant to the by-laws and rules of the said association she borrowed from it the sum of $500, and to secure the same executed on the 10th day of May, 1892, her bond in the penal sum of $1,000, conditioned to pay to the said association $3 monthly as installments on the said shares of stock, together with $2.50 monthly as premium in advance on the said loan, and the further sum of $2.50 monthly as interest. That in accordance with the rules, regulations, and by-laws of said association, adopted and treated as part of the said bond, the payments thus mentioned were required to be made at the home office of the association at Atlanta, Ga., and continue until the payment of dues so to be made that such should equal the sum or value of $100, when said shares could be deemed to be matured, and the value thereof be applied in liquidation of the loan. That to secure said bond she executed a mortgage of land set out at large in the bill; said mortgage, besides the usual covenants, providing that the mortgagor keep insured the buildings on the land in the sum of $500, and to assign the policy to the association. That the defendant made all payments required by the bond promptly up to and including that of September, 1899. That since then no payments whatever have been made on the bond. The bill alleges that there is now due on the bond the original loan, interest thereon to April 1, 1900, $15 premium accrued and unpaid to the same date, and insurance premiums unpaid $15. The prayer is for foreclosure of the mortgage.

The defendant interposed a demurrer to the bill as not within the jurisdiction of this court, amount in controversy being less than $2,000. It is established beyond controversy that when the Circuit Court of the United States has obtained jurisdiction over a corporation by the filing of creditors' bill and the appointment of a receiver any suit by or against the receiver in the course of the winding up of such corporation, whether for the collection of his assets or for the defense of its property rights, must be regarded as ancillary to the main cause, and is cognizable in the Circuit Court, regardless either of the citizenship of the parties or the amount in controversy. White v. Ewing, 159 U. S. 39, 15 Sup. Ct. 1018, 40 L. Ed. 67. All the cases upon and sustaining this proposition are quoted. The demurrer is overruled.

The defendant has filed her answer. The answer is in the form of an answer to a complaint as a code pleading. This is not proper, but no exception has been taken to it. It denies that there is any-

thing due on the bond, or that there is any mortgage on the land. This proceeds upon the idea that the bond has been satisfied in full, for in the next sentence the execution of the bond and mortgage is admitted. The next defense is that the transaction of the loan was entered into upon the representation and guaranty that the stock would mature and reach its par value of $100 per share in 83 months from the time she became a subscriber. She avers that she has paid up all that there is that was contracted for during that period. It is true that the literature holds out the prospect of winding up the transaction in the period stated, but it was put more as an estimate, the term itself importing uncertainty, and so it cannot be construed as a guaranty.

Another defense is that, having become a borrower under this guaranty and representation, she paid upon the loan $435 and a number of insurance premiums—that is to say, $25 in 1892, $50 in 1899, and $60 for each of the years 1893, 1894, 1895, 1896, 1897, and 1898; that the scheme of all building and loan associations, including this one, is that all payments made by a borrower, whether on stock or otherwise, are to be applied in liquidation of the debt; that, even if 12 per cent. per annum be adopted as the rate to be paid, she has overpaid it. But she had the use of the money, and this implies a promise to pay interest. The insurance was as much for her benefit as for that of the association. The only payments going to the principal of the debt were the installments on the stock. The rule with regard to credits on these loans of building and loan associations is not as broad as that contended for, except when the defense of usury is sustained. Besides this, the contract is expressed in the bond of the defendant, and that was to pay monthly $3 on installments of stock, $2.50 interest, and $2.50 as premium, as well as to observe the covenants set out in the mortgage. The payment of these sums of money specified will discharge the bond if kept up until the stock attains its par value, and nothing is said about payments for insurance or taxes. There is an important proviso in the bond, and that is, upon final settlement the association can only retain as installments on such stock and interest no greater than the sum actually advanced, interest thereon at the rate of 8 per cent. per annum.

The next defense is that the loan was usurious under the law of South Carolina. The home office of the association was Atlanta, Ga. The subscription was made there. The money was lent there. The payments under the contract were to be made there. The contract is a Georgia contract, and construed under the laws of Georgia. Bedford v. Eastern B. & L. Association, 181 U. S. 242, 21 Sup. Ct. 597, 45 L. Ed. 836; McIlwaine v. Ellington, 49 C. C. A. 446, 111 Fed. 584, 55 L. R. A. 933; Guaranty Savings, etc., v. Alexander (C. C.) 96 Fed. 872; Pollock v. Association, 51 S. C. 430, 29 S. E. 77, 64 Am. St. Rep. 683. Under the statute law of Georgia a contract like this is not usurious. See opinion in Interstate B. & L. Association v. Edgefield Hotel Company (decided a few days ago) 120 Fed. 422.

The next defense is that complainant admitted in writing that the amount due on the debt of the defendant had been paid in full. This

was faintly urged, because it appears that a statement made to that effect was made in mistake, and was at once recalled, and that no rights intervened. "A mistake of fact, honestly made, can always be relieved in equity." Rhode Island v. Mass., 15 Pet. 233, 10 L. Ed. 721. "Money paid by mistake can be recovered." United States v. Barlow, 132 U. S. 281, 10 Sup. Ct. 77, 33 L. Ed. 346. "Court of equity will open statement made by mistake, though full receipts have been given." McCrae v. Hollis, 4 Desaus. 122. "Even a receipt may be contradicted by parol evidence." Heath v. Steele, 9 S. C. 86. The last defense has been abandoned.

The case at bar will depend upon the construction of the last clause of the bond, in these words: "Upon final settlement with the association it is to retain as installments on the said stock and interest no greater sum than the sum actually advanced, with interest thereon at the rate of eight per cent. per annum." That is to say, whatever payments may be made by the defendant either during the currency of the contract or at its conclusion, on final settlement the association cannot retain a greater sum than the amount of the debt, with 8 per cent. annual interest to that date. If more money than this is paid, the surplus may be returned. If this amount is paid on final settlement, the bond must be canceled, and the mortgage satisfied. The words are "installments on said stock and interest." These words exclude the payments on account of premium. The bond is dated 10th of May, 1892. The monthly installments on the stock are $3; those on the interest $2.50. Taking the decree in this case as the date of final settlement, and fixing the date as of the 10th of February, 1903, there will then have elapsed 10 years and 9 months, or 129 months. For each of these $5.50 was due and payable as installments; in all, $709.50. There has been actually paid installments to and including September, 1899; that is to say, seven years and three months—87 months. The installments being $5.50 each a month, she has paid $478.50, and is entitled to credit for this, with interest calculated according to the method of partial payments when each installment was paid.

The standing master will state the account, charging the defendant with $500 and interest thereon from the 10th of May, 1892, at the rate of 8 per cent. per annum. Upon paying the difference of this amount, with the installments already paid, following the method of partial payments, and the cost of these proceedings, the mortgage will be satisfied, without prejudice to any right she may have to dividends or profits.