PACIFIC STATES SAVINGS, LOAN & BLDG. CO. v. GREEN et al.

(Circuit Court of Appeals, Ninth Circuit.   May 25, 1903.)

No. 928.

**1. BUILDING AND LOAN ASSOCIATIONS—CONTRACT WITH BORROWING STOCKHOLDER—LAW GOVERNING.**

Where the mortgage given by a borrowing stockholder in a building and loan association provides that payments thereon shall be made at the home office of the association, the contract is governed by the laws of the state in which such office is located, although the mortgaged property may be situated in a different state.

**2. SAME—VALIDITY—PREMIUMS.**

Premiums paid by a borrowing stockholder in a building and loan association are not payments on the debt, but on his stock, of which he receives the benefit by reason of his dual relation to the association in the increased value of his stock and its consequent maturity at an earlier date; and the fact that by reason of his default, or the default of other stockholders, he fails to realize the benefits contemplated by the contract, does not render it unconscionable, nor authorize a court of equity to refuse to enforce it in accordance with its terms, in the absence of fraud, mistake, or undue advantage taken in its execution.

**3. SAME.**

A contract between a building and loan association and a borrowing stockholder is not unconscionable, so as to authorize a court of equity to refuse to enforce it in accordance with its terms, because it requires the stockholder to carry and mature stock of a par value double the amount of the loan, paying interest on the loan meantime, one-half of which stock is assigned to the association absolutely as a bonus or premium, or, in case of prior payment of the loan through foreclosure or otherwise, to pay in addition the amount due up to that time on the premium stock.

Appeal from the Circuit Court of the United States for the District of Oregon.

George W. Baker and G. W. Allen (John Croylan, of counsel), for appellant.

Lionel R. Webster, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge.   This is a suit to recover $2,594.90 upon a contract and bond executed by appellees Green to appellant, and for the foreclosure of a mortgage upon real estate situate in Oregon.   The court below sustained a demurrer to the complaint, and dismissed the bill.   From the decree of dismissal this appeal is taken.

Several of the essential averments of the bill of complaint, and some of the facts of this case, are referred to in the opinion of the court upon the demurrer (114 Fed. 412), and need not, in their entirety, be repeated here.   The court below, upon the facts, held that the contract between the parties was one of unusual hardship, and such as a court of equity ought not to enforce.   The case, as made out in the bill of complaint, involves the consideration of the modes and methods adopted by the loan and building companies, and particularly of appellant herein, with parties securing loans therefrom,

especially in cases where defaults have been made in the payment of interest and premiums, in accordance with the contract of the parties. This field of litigation has become very extensive in recent years. Divers and diverse opinions have been rendered in regard, thereto in the different state and federal courts; much, of course, depending upon the different statutes and different contracts made and. entered into thereunder. In the present case it appears that appellant is a California corporation engaged in the building and loan business, and having its home office in San Francisco. It is provided in the mortgage sought to be foreclosed herein that the payments. due thereon are to be paid "at the office of its said treasurer in said city of San Francisco, state of California." We are therefore of opinion that the contract should be treated as a California contract, and that the rights of the parties must be determined in accordance with the laws of that state, especially in so far as the question of usury in the payment of interest is considered, notwithstanding the fact that security for its performance was the taking of a mortgage upon real estate in Oregon. Eastern Building & Loan Ass'n v. Bedford (C. C.) 88 Fed. 7, 14; Bedford v. Eastern Building & Loan Ass'n,. 181 U. S. 227, 242, 21 Sup. Ct. 597, 45 L. Ed. 836; Andruss v. People's L. & S. A., 36 C. C. A. 336, 94 Fed. 575, 580; Guarantee Savings Loan & I. Co. v. Alexander (C. C.) 96 Fed. 870, 872; Southern Building & L. A. v. Rector, 38 C. C. A. 686, 98 Fed. 171; Hieronymous v. New York N. B. & L. A. (C. C.) 101 Fed. 12; McIlwaine v. Ellington, 49 C. C. A. 446, 111 Fed. 578, 55 L. R. A. 933; Alexander v. Southern Home Building & Loan Ass'n (C. C.) 120 Fed. 963, 965.

We shall not attempt to discuss at any length the objects sought to be accomplished by the building and loan associations that are springing up all over the country, nor enter into any detailed review of the various statutes of the different states authorizing their incorporation, and making provisions for their protection, but shall endeavor to confine ourselves as closely as possible to the question whether or not the averments in the bill of complaint affirmatively show that the contract made between the parties hereto is unjust and inequitable, and so unconscionable, in its nature, and character,. as to deprive appellant of any relief thereunder in a court of equity.

The suggestion on behalf of appellees that the general principles. of equity, as applied to penalties and forfeitures, should be enforced in this case, is sufficiently answered by Earl, J., in Concordia Savings & Aid Ass'n v. Read, 93 N. Y. 474, 480. Among other things, he said:

"This is not a case where a larger sum is made payable in consequence of the nonpayment of a smaller sum, and payment of a larger sum is not imposed as a penalty; but this is a case where the whole of a specified sum becomes due because the partial payments are not made as stipulated, and. the principles of law which authorize courts of equity sometimes to relieve from forfeitures do not apply to such a case as this."

The theory upon which the court below rendered its opinion is. that the transaction "was one of loan, and nothing else," and that the complainant is entitled only to its loan and interest, and cannot in equity be permitted to collect installments or premiums required:

in order merely to qualify the defendant to borrow money from the association. This theory has been sustained in some of the decisions in the state courts, cited by the appellees, notably in Utah (Howells v. Pacific States S., L. & B. Co., 60 Pac. 1025, 81 Am. St. Rep. 659); in Washington (Hale v. Stenger, 63 Pac. 554); and in Oregon (Western Loan Co. v. Houston, 65 Pac. 611). But the objection to it is that the courts, in order to sustain this view, ignore the contract freely and voluntarily entered into by the parties, with full knowledge of all the conditions that might arise if the interest and premiums were not promptly paid, and make a new contract of a different character between the parties.

It seems to have been contemplated by both parties when the contract was entered into in February, 1893, that the stock would mature in 84 months, which would require 84 payments, of $93.50 each—$66 premium and $27.50 interest—making a total of $7,854 of principal and interest to pay off and discharge the loan in 7 years. If this anticipation had been realized, and the premiums and interests specified in the contract had been fully paid, it certainly could not legally be said that the contract was unjust, inequitable, or unconscionable, because, as a matter of fact, the full amount that would have been paid by Mrs. Green, if she had secured a loan from any of the banks in Oregon for a period of seven years at the legal rate of interest in said state, would have been in excess of what she would have been required to pay if the stock of the loan association had reached par within the time anticipated. But it is safe to say that she could not ordinarily have obtained such a loan from any of the banks for such a length of time. The building and loan associations were organized to enable persons of limited means to borrow money and make small payments at stated times, but the money could not be procured unless the borrower bid for and obtained a certain number of shares of stock, proportionate in value to the amount loaned, one half of said shares as a premium, and the other half pledged as security for the loan, as required by the by-laws of the association. The success of associations of this character depends upon the promptness of its members, investors, or borrowers in making their payments. Perhaps the greatest drawback to the success of these institutions is one arising from the default of the borrowers to make good their payments. But investors are also liable to withdraw their subscriptions in times of depression or difficulty, and the shares of stock are liable not to mature in seven years.

In Endlich on Building & Loan Associations, § 149, the author says:

"There is obviously a great difference between the case of a member who has fulfilled faithfully all the requirements of his undertakings with the building association, of those which relate to the duties of membership generally, as well as those which pertain to his position as a borrower, and that of a member who, after obtaining an advance, neglects both classes of obligations, and renders himself liable to compulsory proceedings on the part of the society, which the latter is bound to institute all the more rigorously as the success of the whole scheme depends upon the performance of all his duties as a member. Whatever, therefore, may be the advantages allowed to members voluntarily repaying loans, these provisions have no application, and offer no immunities, to those who become defaulters, and are upon that

ground sued by the association upon the covenants of their obligations. Having thus violated the rules of the society, they are not entitled to the benefits held out to those who keep them, nor are they within the meaning of the statute designed to favor the conscientious borrowers."

Whether the association offers a good and safe investment to all of its subscribers is a question not here necessary to discuss. Enough has been shown to make it clear that the borrower investigated the business methods of the association, and with full knowledge thereof executed the contract, and, in the absence of any fraud, misrepresentation, deceit, mistake, or undue influence, ought to be bound by it, because, without such a showing, a court of equity ought not to disregard the contract which the parties deliberately made, and make a new contract for them. The general rule is, we think, well settled that a court of equity is not authorized to set aside and annul a contract made by parties with full knowledge of all the terms and conditions of the same, without it is clearly and satisfactorily shown that there was fraud, oppression, or undue advantage taken with reference to its execution. Wann v. Coe (C. C.) 31 Fed. 369, 371; Vermont L. & T. Co. v. Dygert (C. C.) 89 Fed. 123, 124; Boyce v. Fisk, 110 Cal. 107, 116, 42 Pac. 473; 1 Story's Eq. Jur. § 331.

A contract equitable, fair, and just when made cannot be defeated by conditions subsequent that were not within the anticipations or expectations of the parties when the contract was made. Especially is this true where the results arising from the subsequent conditions were of a character over which the parties had no control, and for which they were in no way responsible. Marble Co. v. Ripley, 10 Wall. 339, 354, 19 L. Ed. 955; Franklin Telegraph Co. v. Harrison, 145 U. S. 459, 472, 12 Sup. Ct. 900, 36 L. Ed. 776; Blake v. Pine Mountain Iron & Coal Co., 22 C. C. A. 430, 76 Fed. 624, 639; Railroad Co. v. Railroad Co., 144 N. Y. 152, 162, 39 N. E. 17, 26 L. R. A. 610; Southern R. Co. v. Franklin & P. R. Co., 96 Va. 693, 709, 32 S. E. 485, 44 L. R. A. 297.

We are of opinion that the demurrer interposed to the complaint ought not to be sustained upon the ground claimed by appellees, that the stock subscription is not in any sense a stock subscription at all, but a mere expedient to secure unconscionable terms in the loaning of the money. But, in any event, such an assumption ought not to be drawn from any of the averments in the bill, which, upon demurrer, are to be taken as true. We understand the law to be that payments of premiums on the stock are not premiums made upon the loan, but are to be applied solely to the credit of the shares. This view is certainly sustained by the great weight of authorities. Towle v. American B., L. & I. S. (C. C.) 61 Fed. 446, 448; Sullivan v. Stucky (C. C.) 86 Fed. 491; Andruss v. People's B., L. & S. A., 36 C. C. A. 336, 94 Fed. 575, 580; MacMurray v. Gosney (C. C.) 106 Fed. 11; Manship v. New South B. & L. A. (C. C.) 110 Fed. 845, 855; Columbia B. & L. A. v. Junquist (C. C.) 111 Fed. 645; Kinney v. Columbia Savings & L. A. (C. C.) 113 Fed. 359, 365; Clarksville B. & L. A. v. Stephens, 26 N. J. Eq. 351, 356; People's B. & L. A. v. Furey, 47 N. J. Eq. 410, 413, 20 Atl. 890; Cason v. Seldner, 77 Va. 293, 297.

In McNamara v. Oakland Building & Loan Association, 131 Cal. 337, 343, 63 Pac. 670, appellant contended that if payment of the note could be enforced he had the correlative right to offset his payments and his earnings, and if he is granted this right it will appear from the evidence that the debt is paid. The court said:

"Appellant is mistaken as to the nature of the agreements into which he entered. He occupied the dual relation to the corporation of borrower and stockholder, each of which was distinct from the other. Under the scheme he could not be a borrower without becoming a stockholder, but he could be a stockholder without being a borrower."

In the course of this opinion the court said:

"Whether the investment is a wise one to the borrower, who makes all required payments, we are unable to say; but it is clearly not so to one who cannot persist in his payments until the scheme closes, or until the series to which his shares belong has matured. We cannot find, however, either in the statute or in the by-laws, or in the contracts entered into, any authority for equity to interpose so as to aid the unfortunate borrower in the situation of plaintiff. * * * We have seen that plaintiff will receive as a credit on his debt the value of his shares when sold, and, as these shares represent his interest in the association, he will thus receive all that he is entitled to, as a defaulter, upon any principle of equity."

In Manship v. New South B. & L. A., supra, the court discussed the principles applicable to this case at great length. Among other things it said:

"To enter at large upon the discussion of the principles upon which building and loan associations are founded would serve no useful purpose. It is enough to say that their contracts with their members have given rise to an enormous amount of litigation within the last few years, and some difference of opinion by the courts. I think a majority of the states of the Union recognize the validity of such contracts, and there is no doubt that the weight of authority is in favor of upholding what are known as building and loan contracts. * * * Liberty to contract is one of the essential elements of freedom, and one of the most valuable rights incident to our institutions, and it is very difficult for me to see any reason in law or morals why a party desiring to become a member of a building and loan association may not do so; and if he desires that a part of his contributions shall be credited upon the amount borrowed by him, and that a part shall go to swell the loan fund of the association, to be loaned to his fellow members of the association, and in this way swell the profits and increase the value of his stock therein, and thereby hasten its maturity, I see no reason why he should not be permitted to do so, and why his contract might not be enforced according to his agreement; and, furthermore, I fail to understand what right the court, which may be called upon to enforce such contract, has to appropriate his stock payments or his payments of premiums in any other way than he agreed by his contract that they should be appropriated. * * * The arbitrary appropriation of premiums and stock payments to the liquidation of the debt of a borrowing member of a building and loan association, or the arbitrary combining of premiums and interest charges in order to constitute usury in a contract which is plainly written and easily understood, in direct contravention of the undisputed terms of the contract, is unjustifiable."

In view of what has already been said, it is manifest that the contention of appellees that this court has no jurisdiction of this case is without merit. The mathematical computation made by counsel is principally based upon the theory entertained by the court below, that appellant is only entitled to the amount of its loan and interest.

The averments in the bill of complaint clearly show that the amount alleged to be due is sufficient to give this court jurisdiction.

The decree of the Circuit Court is reversed. Appellees will be given a reasonable time to answer the bill of complaint.