# WASHINGTON NATIONAL BUILDING & LOAN ASSO-CIATION OF WASHINGTON, D. C. *v.* PIFER.

BUILDING ASSOCIATIONS; CONTRACTS; USURY.

A contract between a building association and a borrowing member thereof, consisting of a bond of the member, secured by deed of trust on real estate in West Virginia, which is concededly usurious under the laws of this District, will be construed according to its laws, and declared usurious, although it recites that it is made under, and shall be subject to, the laws of Virginia; where it appears that, although incorporated in Virginia, the name of the association indicates that it is a District of Columbia corporation; and where it also appears that its office has always been located here, its books kept here, its officers live here, and its business is transacted here, and all payments by the member in the form of dues, interest, etc., have been made here. (Citing *Croissant* v. *Empire State Realty Co.* 29 App. D. C. 547.)

No. 1801.   Submitted February 12, 1908.   Decided June 2, 1908.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia granting the relief prayed for in a bill for the release of a deed of trust and for an accounting.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District of Columbia granting complainants, Carrie Pifer and John W. Pifer, appellees here, an accounting, and release from a bond and a deed of trust.   The case was tried upon agreed statements of facts, from which it appears that the complainant [Carrie Pifer] is, and was in September, 1895, a resident of Parsons, West Virginia, and the owner of the real estate described in her bill.   The defendant, the Wash-

ington National Building & Loan Association of Washington, District of Columbia, is a corporation organized under the laws of the State of Virginia and authorized to do business in the State of West Virginia. Its central office, however, has always been located in the city of Washington, where its books and accounts have been kept, and where its business has been managed and conducted.

Prior to September 3, 1895, the complainant petitioned the local board of said association in West Virginia for a loan of $500, which application, being recommended by that board, was granted by the board of directors of said association in Washington, and a draft sent from Washington to the attorney of the association at Parsons, West Virginia, who, after the execution of the bond and deed of trust mentioned in the bill, delivered said draft to the complainant. Said bond contains a recital that the association is a body corporate under the laws of the State of Virginia, and that the bond is executed under and subject to the laws of that State. All payments in the form of dues, interest, etc., were to be made at the central office of the association in Washington. The complainant made 81 payments, which exceeded by $14.16 the sum total of the said loan of $500 with interest thereon at the rate of 6 per cent per annum. Thirty-six of these payments were made to the association in Washington, and 45 payments were made through a representative of the association in the State of West Virginia. Credit, however, was not given the complainant for these payments until the same had been received by the association at its central office, it being understood that said local representative, in receiving said payments, was the agent of the complainant, and not the agent of the association. Under the terms of the agreement between the parties, there was due the association, at the time of filing this suit, $381.32. If the agreement is held to be usurious, the association had been overpaid to the amount of $14.16.

It is conceded that, under the laws in force in the District of Columbia, when this contract was entered into, it was usurious.

*Mr. M. J. Colbert* and *Mr. Edmund Brady* for the appellants.

*Mr. Richard C. Thompson* and *Mr. John E. Laskey* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

Two questions are presented by the assignments of error: (1) That the contract should be construed according to the laws of Virginia; and (2) that it should be construed according to the laws of West Virginia.

1. It is obvious that this Building & Loan Association obtained a charter in Virginia, not with any idea of locating in that State, but with the definite and distinct idea and intention of locating in the District of Columbia; hence its name the "Washington National Building & Loan Association of Washington, D. C." As above stated, its principal office has always been located here, its books have been kept here, its officers have lived here, and its business has been transacted here. Its charter merely gave it corporate existence, and, when it came here and located, it became *eo instante* subject to our laws. By the laws of comity we recognize its charter, but in so doing we do not abrogate our own laws in favor of the laws of the State creating it. The authority of one jurisdiction over a corporation of another jurisdiction is co-extensive with its authority over a corporation of its own creation. In the present case neither of the parties to the contract was domiciled in Virginia, nor was the contract to be performed there. Under the law of the District of Columbia, the contract was usurious, and must have been known to be so when made. It is manifest, therefore, that the attempt on the part of the association to stipulate against the laws of its domicil must be held to be futile and against the public policy of this jurisdiction; *National Mut. Bldg. & L. Asso.* v. *Brahan,* 193 U. S. 635, 48 L. ed. 823, 24 Sup. Ct. Rep. 532; *New York L. Ins. Co.* v. *Cravens,* 178 U. S. 389, 44 L. ed. 1116, 20 Sup. Ct.

Rep. 962; *American Freehold Land & Mortg. Co.* v. *Jefferson,* 69 Miss. 778, 30 Am. St. Rep. 587, 12 So. 464.

2. A contract, generally speaking, is governed by the law with reference to which it is made, and, as was said in *Croissant* v. *Empire State Realty Co.* 29 App. D. C. 547, "the place provided for payment is therefore sometimes of controlling importance when the question in controversy relates to the rate of interest, which may be legal in one jurisdiction and usurious in the other." In that case it was ruled that the contract should be governed by the law of the District of Columbia because "made and apparently intended to be performed therein." In the present case it clearly appears that the contract was to be performed in the District of Columbia, the place of the domicil of the party making the loan. Under the stipulation in the bond, that the contract should be controlled by the laws of Virginia, it is apparent that the contract was not made with reference to the laws of the State of West Virginia, the domicil of the borrower. The parties, therefore, must be regarded as having contracted with reference to the laws of the District of Columbia, for "with regard to the question what law is to decide whether a contract is, or is not, usurious, the general rule is the law of the place where the money is made payable." *Junction R. Co.* v. *Bank of Ashland,* 12 Wall. 226, 20 L. ed. 385. In building and loan association contracts the rule appears to be well settled that, in the absence of a stipulation to the contrary, they are to be governed by the law of the place of performance. In *Bedford* v. *Eastern Bldg. & L. Asso.* 181 U. S. 243, 45 L. ed. 845, 21 Sup. Ct. Rep. 597, the court refers with approval to the case of *Pioneer Sav. & L. Co.* v. *Cannon,* 96 Tenn. 599, 33 L.R.A. 112, 54 Am. St. Rep. 858, 36 S. W. 386, where a note secured by mortgage was given by a citizen of Tennessee to a building association and made payable at Minneapolis, Minnesota. It was held that the contract was a Minnesota contract and governed by the laws of that State.

A number of cases involving the same question here in issue have been passed upon by Federal courts in different jurisdic-

tions, and with great uniformity it has been held that the law of the State of the domicil of the association, and where the contract was to be performed, should govern its construction. *Building & L. Asso.* v. *Logan,* 14 C. C. A. 133, 30 U. S. App. 163, 66 Fed. 827; *Vermont Loan & T. Co.* v. *Dygert,* 89 Fed. 123; *Dygert* v. *Vermont Loan & T. Co.* 37 C. C. A. 389, 94 Fed. 913; *Guarantee Sav. L. & Invest. Co.* v. *Alexander,* 96 Fed. 870; *Hamilton* v. *Fowler,* 40 C. C. A. 47, 99 Fed. 18; *Hieronymus* v. *New York Nat. Bldg. & L. Asso.* 101 Fed. 12; *MacMurray* v. *Gosney,* 106 Fed. 11; *McIlwaine* v. *Ellington,* 55 L.R.A. 933, 49 C. C. A. 446, 111 Fed. 578; *United States Sav. & L. Co.* v. *Harris,* 113 Fed. 27; *Interstate Bldg. & L. Asso.* v. *Edgefield Hotel Co.* 120 Fed. 422; *Alexander* v. *Southern Home Bldg. & L. Asso.* 120 Fed. 963; *Pacific States Sav. Loan & Bldg. Co.* v. *Green,* 59 C. C. A. 167, 123 Fed. 43; *Lewis* v. *Clark,* 64 C. C. A. 138, 129 Fed. 570.

In the case at bar we are not disposed to indulge in any presumption in favor of the association owing to its attempt to avoid the laws of this jurisdiction. Originally it was within its power to have contracted with reference to either the law of this District, or the law of West Virginia. Failing to do either in terms, the contract must be controlled according to the general rule. The association was located here, and here the contract was to be performed. That the security for the loan consisted of real estate in West Virginia does not affect the question. *De Wolf* v. *Johnson,* 10 Wheat. 367, 6 L. ed. 343.

We hold, therefore, that the contract must be controlled by the law of the District of Columbia. It follows that the decree must be sustained, with costs, and it is so ordered.

*Affirmed.*